410 So.2d 318 (1982)
Marilyn BEAL
v.
LOMAS AND NETTLETON CO., United American Life Insurance Co., American Bankers Life Assurance Co., Fortune Manino, Pierre Villemarette, Bill Marettie.
No. 12561.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1982.
*319 A. Patrick Dehon, Jr., Brian D. Zeringer, New Orleans, for plaintiff-appellee.
George J. Richaud, Young, McMahon & Levert, New Orleans, for defendants-appellees (Lomas and Nettleton Co. and American Bankers Life Assurance Co. of Florida).
Before REDMANN, SCHOTT and CIACCIO, JJ.
SCHOTT, Judge.
This is a suit by plaintiff, Marilyn Beal, against defendants, Lomas and Nettleton Company (hereinafter Lomas) and American Bankers Life Assurance Company of Florida (hereinafter American), for death benefits arising out of the accidental death of plaintiff's husband, Howard Beal, Sr. Lomas carried the mortgage on a home purchased by the Beals in 1970. In 1972 the Beals purchased a policy of accidental death insurance on Mr. Beal through Lomas from United American Life Insurance Company. In 1973 this policy was cancelled and the Beals were notified by Lomas that coverage had been secured with American. However, the coverage provided by American did not include accidental death but only disability protection. Beal was killed in an accident in December, 1974, and after plaintiff filed her claim with American she was advised that there was no coverage. She alleged in her petition that she and her husband had been intentionally misled as to the extent of coverage under American's policy. The trial court awarded her a judgment for $19,840 against Lomas and American who have taken this appeal. The issue is whether the facts support the judgment against these defendants on the theory of negligent misrepresentation.
In September, 1973, Lomas sent a copy of the following letter to its customers, including the Beals:
[SEAL]
The Lomas & Nettleton Company
*320
 2001 Bryan Tower
 P. O. Box 5644
 Dallas, Texas 75222
 Telephone 214 748-0511
Dear Homeowner:
The United American Life Insurance Company has decided to discontinue writing the type of accident and health insurance as of October 1, 1973, afforded you by the policy in your possession.
Therefore, in order to provide you with uninterrupted coverage, we have made arrangements to continue this type of coverage with American Bankers Life Assurance Company of Florida.
The enclosed policy, effective as of October 1, 1973, has been issued at the same premium you are now paying monthly and provides you with monthly disability income to make your monthly mortgage payments during periods that you may be unable to work as a result of sickness or accident for as long as five years (one year for those age 50 and over) after you have been disabled for more than 30 days.
The United American Life Insurance Company, the present carrier on your policy until October 1, 1973, will continue to pay all benefits now pending in the same manner as heretofore and will be responsible for any claims which may develop prior to October 1, 1973, the time the enclosed policy issued by American Bankers becomes effective.
If you have any questions relative to the enclosed new policy or are in need of any information, please contact our nearest regional office by telephone, 214/748-0511, or send your mail inquiries to American Bankers Life Assurance Company, 600 Brickell Avenue, Miami, Florida 33131.
Very truly yours, /s/ P. Warren Smith P. Warren Smith Vice President
Attached to the letter was an insurance policy providing for monthly indemnity in the event of Beal's disability but no accidental death benefits.
Plaintiff testified that she and her husband interpreted this letter to mean that they were getting from American the same coverage, including accidental death benefits, as had been provided under the United American policy. She stated that they were originally motivated to purchase this policy from United American because Beal was accident prone and had lived with the conviction that he would die not from natural causes but from accidental causes.
Defendants produced an official from Lomas who testified that in April, 1974, Lomas had sent a copy of the following letter to its customers, including the Beals:
Dear Customer:
Accidental death benefits are not included in your new Accident and Health Policy which became effective October 1, 1973 and is underwritten by American Bankers Life Assurance Company of Florida. Many borrowers have requested that we offer to them this form of protection with the premium included in their monthly mortgage payment.
Accordingly, we have made arrangements to offer Accidental Death and Dismemberment, underwritten by American Bankers Life Assurance Company of Florida, which will pay $10,000 in the event of Accidental Death to those enrolled who are under age fifty and $5,000 to those between the ages of fifty and sixty-five, at a cost of $1.50 per month. This premium will be included in your monthly mortgage payment.
If you are interested in the purchase of this coverage which is offered to you on a voluntary basis, complete the application, return it to us in the self-addressed envelope, enclosed for your convenience, and a policy will be forwarded to you with the premium included in the first monthly mortgage payment after you have been accepted.
If you are NOT interested in the purchase of this coverage, disregard this letter. We plan to hold open the opportunity to enroll at this time for a period of only sixty days.

*321 Sincerely, /s/ P. Warren Smith P. Warren Smith Vice President PWS:jk Enclosures
P.S. If you desire to double the benefits at a monthly cost of $3.00, please indicate your desire for double coverage on the application.
However, this official admitted he had not mailed the letter himself and could not testify that such a letter was properly addressed and mailed to the Beals. He also testified that Lomas got no commissions on the sale of this insurance but did collect the premiums and receive some compensation from American for handling funds. He also admitted that it was beneficial to Lomas for accidental death policies to be written in that such policies would provide Lomas with some additional security for the mortgage loans.
Lomas first argues that the letter of September, 1973, was not misleading and relies on the third paragraph of the letter to support that argument. The trial judge found, and we agree, that a reasonable person reading the first two paragraphs of the letter would be led to believe that the coverage offered by American was identical to that offered by United, and that the third paragraph was simply descriptive of some minor change with respect to the disability provisions of the policy. Lomas argues further that the Beals breached their own duty to read the American policy which was attached to this letter. However, once the Beals were misled into believing that the coverage was the same, they were under no duty to read the attachment. The ultimate determination by the trial judge was a factual one, namely, that the Beals were misled and that the letter was misleading to a reasonable person. His findings in this connection will not be disturbed on this appeal.
The next argument by Lomas is that the Beals received the letter of April, 1974, offering accidental death benefits. Mrs. Beal denied that they received this letter and in the absence of a testimony that the letter was properly addressed and mailed no presumption of receipt by the Beals applies. DiRosa v. Bosworth, 225 So.2d 42 (La.App. 4th Cir. 1969).
Louisiana recognizes a cause of action for negligent misrepresentation based on LSA C.C. Art. 2315; Devore v. Hobart Manufacturing Company, 367 So.2d 836 (La. 1979). In order for the doctrine to apply there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused damage to plaintiff. In this case, special relationship between Mrs. Beal and Lomas arose when Lomas first put United American in touch with the Beals and continued during the period when Lomas was collecting the premiums on the United policy. When it undertook to substitute American's policy for United's with the substantial change of deletion of accidental death benefits it had a duty to convey that information correctly to the Beals. It breached this duty by sending a letter to the Beals which was in fact misleading with respect to the new coverage. Plaintiff's testimony, which was accepted as true by the trial judge, was that they were primarily interested in accidental death benefits and relied to their detriment on Lomas' representation that such benefits were included in the new policy. We have concluded that plaintiff carried her burden to prove facts which support recovery against Lomas for negligent misrepresentation.
On the other hand, there are no facts which support the judgment against American. The letter of September, 1973, was written by Lomas and its only connection with American was by reference in the letter and a copy of the certificate of insurance issued by American. We know of no theory of law which would make American liable because Lomas misrepresented to plaintiff and her husband the contents of American's policy.
Accordingly, the judgment in favor of plaintiff, Marilyn Beal and against Lomas and Nettleton Company, is affirmed, but the judgment in favor of plaintiff against *322 defendant, American Bankers Life Assurance Company, is reversed and set aside, and there is judgment in favor of American, dismissing plaintiff's suit against it at her cost.
AFFIRMED IN PART REVERSED IN PART AND RENDERED.