457 So.2d 307 (1984)
Madeline R. DOHMANN, Plaintiff-Appellant,
v.
UNITED GAS PIPE LINE, et al., Defendants-Appellees.
No. 83-947.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
*308 Morrow & Morrow, Jeffrey M. Bassett, Opelousas, for plaintiff-appellant.
Sandoz, Sandoz & Schiff, Lawrence B. Sandoz, Jr., Opelousas, Landry, Watkins & Bonin, Nan M. Landry, New Iberia, for defendants-appellees.
Before FORET, STOKER and KNOLL, JJ.
KNOLL, Judge.
Madeline R. Dohmann appeals a judgment dismissing her claim for loan insurance coverage of $8,904.94. The trial court held that United Gas Pipe Line Federal Credit Union (UGPL) was not an agent of Prudential Insurance Company of America (Prudential), and the loan was not made solely on the basis of representations contained in the brochure; therefore, there was no insurance coverage. Dohmann contends the trial court erred in finding that: (1) UGPL was not an agent of Prudential; (2) the loan insurance coverage was not a primary cause for the three loans; (3) the pamphlet was not generally distributed to its members; (4) UGPL and/or Prudential were not bound by the representations in the pamphlet, and (5) in not awarding penalties and attorney's fees. For the following reasons we affirm in part, reverse in part and render.
Madeline Dohmann's husband, Joseph Ted Dohmann, was an employee of Pennzoil and a member of the UGPL Federal Credit Union. Pennzoil had an agreement with UGPL, through its Federal Credit Union, to provide credit privileges to Pennzoil employees. Members in good standing are invited to make loans from the Credit Union which Joseph Dohmann did in March of 1976, July of 1977, and October of 1977, for a total of $22,637.39. On December 8, 1977, Joseph Dohmann was killed in a helicopter crash off the coast of Louisiana. At the time of his death, the loan balance was $18,904.94.
UGPL was a member of the Federation of Louisiana Credit Unions which was insured by Prudential under a group policy. This policy provided loan insurance to the members of the Credit Union up to $10,000 per account. The $10,000 limitation was directly contradicted by a pamphlet distributed by UGPL.
The pamphlet was an invitation to join the UGPL Federal Credit Union and was distributed to Pennzoil employees. It listed several features about the Credit Union and specifically contained the following clause:
"ARE LOANS INSURED? This Credit Union provides Loan Protection insurance, insuring borrowers in the amount of their loan balances without extra cost. This protection (subject only to liberal age and health restrictions) pays off the *309 balance of the loan if the borrower dies." (Emphasis added)
The Dohmanns were not given a copy of Prudential's insurance policy or advised that loan insurance coverage could not exceed $10,000.
After Joseph Dohmann's death, Prudential paid the credit life insurance to UGPL in the amount of $10,000. A statement was sent to Madeline Dohmann for the outstanding balance of $8,904.94. She filed the instant suit individually and as administratrix of the Estate of Joseph Ted Dohmann for declaratory relief.

MISREPRESENTATION BY UGPL
We agree with the learned trial judge that Prudential is not liable for the representations contained in the pamphlet. However, we find UGPL clearly liable for the negligent misrepresentations contained in the pamphlet and reverse the trial judge on that issue.
It is well settled that LSA-C.C. Art. 2315 encompasses a cause of action for negligent misrepresentations. Devore v. Hobart Manufacturing Co., 367 So.2d 836 (La.1979); Beal v. Lomas and Nettleton Co., 410 So.2d 318 (La.App. 4th Cir.1982). In order for the doctrine to apply there must be a legal duty on the part of the defendant to supply correct information, there must be a breach of that duty, and the breach must have caused damage to plaintiff. Beal, supra.
The pamphlet was printed by UGPL and distributed to each of its branch personnel offices in districts all over the United States to give to their employees. UGPL solicited Joseph Dohmann's membership in its credit union by means of the pamphlet containing the enticing feature of full loan protection insurance in the event of the borrowing member's death. UGPL never advised Joseph Dohmann that its credit life did not exceed $10,000, even though Joseph Dohmann made as many as three loans through the credit union for a total of $22,637.39; nor did UGPL offer any explanation for the statement contained in the pamphlet. UGPL held the master group insurance policy with Prudential and did not give a copy of it to its members. The only information concerning the insurance coverage that the members had was contained in the pamphlet, which UGPL distributed.
When UGPL undertook to provide loan insurance coverage if the borrower died, it had a duty to advise its members that there was a limited amount of credit life rather than full coverage as stated in the pamphlet. It breached this duty by failing to advise Joseph Dohmann of the limited amount of credit life, and as a result of this breach, the Dohmann Estate and Madeline Dohmann have an $8,904.94 indebtedness. We therefore find UGPL liable for negligent misrepresentation.

PENALTIES AND ATTORNEY'S FEES
LSA-R.S. 22:5(2) provides:
"In this Code, unless the context otherwise requires, the following definitions shall be applicable:
. . . . .
`Insurer' includes every person engaged in the business of making contracts of insurance, other than a fraternal benefit society. A reciprocal, an interinsurance exchange or a Lloyds organization is an `insurer'."
UGPL Federal Credit Union is not "engaged in the business of making contracts of insurance" merely because it provides credit life insurance to its members. Accordingly, UGPL is not an "insurer" subject to the Insurance Code; therefore, penalties and attorney's fees are denied. Killebrew v. Abbott Laboratories, 359 So.2d 1275 (La.1978).
With this determination, all other issues of this case are pretermitted.
Accordingly, we find that UGPL made negligent misrepresentations to the detriment of Madeline Dohmann, and is therefore liable to Madeline Dohmann individually and as administratrix of the Estate of Joseph Ted Dohmann in the sum of $8,904.94, with legal interest from the date *310 of judicial demand until paid. All costs of this appeal are assessed to United Gas Pipe Line Federal Credit Union.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
FORET, J., concurs.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
At the trial level this case was approached on a contract basis. The trial court concluded, as the majority here concludes, that Prudential Insurance Company of America was not represented by United Gas Pipe Line Federal Credit Union (Credit Union) as its agent, and recovery against it was rejected. The trial court also rejected recovery against the Credit Union. The majority reverses as to the Credit Union and grants recovery against it on a tort basis, finding a cause of action for negligent misrepresentation.
Mrs. Dohmann testified emphatically that her husband had a copy of the pamphlet described in the majority opinion at the time he contracted for the loans. She also emphatically asserted that she and her husband reviewed the contents of the pamphlet, and she and her husband were under the impression that their loan or loans would be insured for the entire balance. I read the majority opinion statement of facts as accepting the plaintiff's position as being true. As I read the trial court's reasons for judgment, it did not accept the statement of facts given by Mrs. Dohmann as being true.
The trial court made a specific finding that the pamphlet published by the Credit Union was never generally distributed to the Credit Union members by the Credit Union in the course of business. This does not mean that Mr. Dohmann never came into the possession of a pamphlet, and Mrs. Dohmann testified that he did have a copy and that they relied upon it in contracting for the loans.
In its reasons for judgment it is quite apparent that the trial court made a credibility evaluation of Mrs. Dohmann's testimony and rejected it. In order for the plaintiff to recover in this case it is necessary that the trial court's finding in this factual matter to be considered manifestly erroneous. In order to find manifest error, we must find that the trial judge was clearly wrong.
In its reasons for judgment the trial court did not specifically state that it did not believe Mrs. Dohmann's testimony. It commented as follows:
"Plaintiff testified that the sole consideration in executing these loans was the insurance coverage as stated in brochure. It appears to the Court highly unlikely that one would take out a loan solely on the basis of the representations of insurance coverage as provided in a brochure as hereinabove described. Furthermore, it would seem that if this indeed was the sole consideration for making the loan with the credit union, plaintiff and/or decedent would have requested a copy of the insurance contract or otherwise further explored the insurance coverage."
I am not persuaded by the reasoning process stated by the trial court. The issue is not whether the impression that the loan balances would be fully covered was the sole consideration for making the loan. The issue is whether the Dohmanns would have contracted for the loan absent the impression (gained from the pamphlet) that the loans would be fully covered. As the quoted statement from the trial court's reasons for judgment is the only apparent basis for rejecting Mrs. Dohmann's testimony, it stands alone against her uncontradicted testimony. Under the circumstances the rejection of Mrs. Dohmann's testimony was manifest error. Accordingly I agree with the opinion of the majority.