894 F.2d 771
 58 USLW 2509
 In re Frank WARD, f/d/b/a Ward Brothers, and Charlene May
Ward, Debtors.
Billy R. VINING, Trustee, Plaintiff-Appellee Cross-Appellant,
v.
Frank WARD, et al., Defendants,
Hamilton & Carroll, Defendant-Appellant Cross-Appellee.
 No. 89-4099.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 22, 1990.
 
 James A. Rountree and William T. McNew, Hudson, Potts & Bernstein, Monroe, La., for Hamilton & Carroll.
 Richard A. Bailly and Stephen J. Katz, Rankin, Yeldell, Herring & Katz, Bastrop, La., for Billy R. Vining.
 Appeals from the United States District Court for the Western District of Louisiana.
 Before KING, JOLLY and DUHE, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 This case involves the disposition of an unscheduled asset of a bankruptcy estate. After a tortuous path involving three trips through bankruptcy and district courts, it presents this rather queer result: the defendant law firm executed on a judgment (the unscheduled asset) for its client (the bankrupt), for which the bankruptcy court awarded it attorney's fees of roughly $8,000, but the bankruptcy court then found that the law firm had committed the tort of negligent misrepresentation against the bankruptcy court and entered judgment against the bankrupt and the law firm in solido of roughly $16,000. The firm appeals the judgment against it and the bankruptcy estate cross-appeals the award of fees. This case raises a novel question: does a law firm owe a duty in tort to a bankruptcy court, before which it has not appeared, to inform the court of the existence of a bankrupt's asset that it had reason to suspect was not scheduled? We conclude that there is no such tort-based duty, and that the award of fees may no longer be proper if the remaining defendants are judgment-proof. We therefore reverse and remand for reconsideration of the fee award.
 
 
 2
 * We first summarize the salient facts before we set them out in detail. The asset at issue was a judgment in favor of the bankrupts that only became collectable two-and-a-half years after the bankruptcy case was closed. The bankrupts assigned the judgment to the law firm that had previously obtained it for them. The firm had not, however, handled their bankruptcy. The firm executed this judgment on some property, which proved to be worth about twice the amount of the original judgment. The firm then notified the bankrupts' former trustee of the collectable asset, but the trustee took no action. The previous owner of the property, however, continued to hound the bankruptcy court to take some action.
 
 
 3
 Finally, some six-and-a-half years after the bankruptcy case was closed, the bankruptcy court reopened the case and appointed a new trustee who sought recovery of the proceeds of the seized property. The law firm claimed that the trustee was time-barred and the bankruptcy court agreed. On appeal to district court the judge suggested some impropriety on the part of the firm that had won the original judgment for its client and took it by assignment years later. This concern resulted in another trip through bankruptcy court, during which the parties argued whether the law firm had committed the tort of negligent misrepresentation. The bankruptcy court found that it had, and the district court affirmed but remanded for a reassessment of allowable attorney's fees. After a third trip through bankruptcy court, a detour by a magistrate and a concluding stop in district court for a summary affirmance of a judgment against the bankrupt and the law firm, in solido, this case has now arrived before us. The bankrupt, however, does not appeal--only the law firm appeals the judgment. The trustee cross-appeals the award of fees.A.
 
 
 4
 The facts in this case are complex but undisputed. On March 23, 1972 Ward Brothers, then a Louisiana agricultural partnership, and Frank Ward individually obtained a default judgment against Clinton Smith in the Fifth Judicial District Court for West Carroll Parish, Louisiana.[1] The law firm of Hamilton & Carroll of Oak Grove, Louisiana represented the Wards in this suit. The judgment was for $12,751.33. It was never paid.
 
 
 5
 During 1977 the Wards' credit status changed. The business was then being operated by Frank and his wife, Charlene, as individuals. On July 12, 1977, five years after the judgment against Clinton Smith had been entered, Frank and Charlene Ward filed liquidation proceedings, for themselves as individuals and for Frank Ward as a partner in Ward Brothers, under Chapter VII of the Bankruptcy Act.[2] Their bankruptcy was handled by a lawyer recommended to them by, but unaffiliated with, Hamilton & Carroll. Upon request by this attorney, Hamilton & Carroll conducted a search for outstanding debts of the Wards recorded in the parish mortgage books. The firm provided a list of the debts recorded against the Wards.
 
 
 6
 With respect to assets, it is uncontroverted that the Wards did not list the 1972 judgment against Clinton Smith on their asset schedule. The Wards were discharged on October 4, 1977 and their bankruptcy case was closed on February 9, 1979.
 
 
 7
 On September 16, 1981 the Wards assigned the judgment against Clinton Smith to North Louisiana Farmlands, Inc., a corporation whose only two shareholders were the name partners in the law firm of Hamilton & Carroll. Apparently, Frank and Charlene Wards' domestic problems motivated all parties to assign the judgment to a single entity for purposes of collection and distribution. On September 17, 1982, Hamilton & Carroll filed an action against Clinton Smith and his wife, Marlene Dier, to revive the judgment and execute it against the property they owned. Dier disputed the claims of the law firm and argued that the judgment belonged to the creditors of the Ward brothers rather than to North Louisiana Farmlands or Hamilton & Carroll.
 
 
 8
 Hamilton & Carroll denied this contention but obviously recognized the possibility that creditors of the Wards might have an interest in the judgment because on October 29, 1982, the firm wrote the bankruptcy trustee who had handled the Wards' bankruptcy, a Mr. Fred Huenefeld. Hamilton & Carroll explained that it had been assigned the judgment against Smith and was reviving it. The firm specifically suggested that Frank Ward's interest in the judgment might have vested in Mr. Huenefeld as trustee. The letter included a copy of the judgment and stated that the firm did not know whether the Wards had listed the judgment as an asset. Mr. Huenefeld did not respond to this letter. On December 15, 1982 Hamilton & Carroll again wrote Huenefeld, again requesting that he act on the matter and suggesting that he might enter an order of abandonment relinquishing any interest in the property. Finally, on April 7, 1983 Huenefeld responded to Hamilton & Carroll with a short letter noting that the case was closed, disclaiming any knowledge of the judgment and asserting that he did not "abandon or even handle any of these assets in the estate because [he] was not aware of them." There the matter stayed as far as Mr. Huenefeld was concerned.
 
 
 9
 Meanwhile, Clinton Smith and his wife Marlene Dier had obtained a divorce. On April 27, 1983 Dier, still hoping to block seizure of her property, wrote the bankruptcy court explaining that the unlisted judgment against her former husband existed and that it had been transferred to a third party. She claimed that the asset had intentionally not been scheduled in order to conceal it. She advised the bankruptcy court to reopen the case. The court took no immediate action, and on October 10, 1984 North Louisiana Farmlands obtained a writ for the seizure and sale of the property. On January 15, 1985 this property was sold by the sheriff, the mortgage was retired and $23,685.13 remained to satisfy the judgment and interest. Hamilton & Carroll took one-third of this in attorney's fees and delivered one-third to Carlton Ward and one-sixth each to Frank and Charlene Ward.
 
 
 10
 Finally, the bankruptcy court acted in the case. On October 3, 1985 it reopened the case of Frank and Charlene Ward and appointed Billy Vining as the new trustee. Vining brought this action on January 7, 1986 to recover the proceeds of the sheriff's sale.
 
 B.
 
 11
 The procedural history of this case is lengthy. We have already noted that Vining's action has been through both the bankruptcy and the district courts three times. The first bankruptcy round ended with a decision on October 17, 1986 for the defendants. The bankruptcy judge issued an oral ruling stating that he had authority to reopen the bankruptcy case despite the two-year statute of limitations in the 1898 Bankruptcy Act because concealment of assets tolled the statute's running. He held that the assignment to North Louisiana Farmlands had been without consideration. He also held, however, that there was no fraud in concealing it because of the low value of the Smiths' property at the time of bankruptcy. He found that the property of Clinton Smith, the home he and his then-wife Marlene Dier owned, was not worth seizing because it would have qualified for a homestead exemption for virtually all of its value. Since effectively there was no asset, the bankruptcy judge reasoned, there could be no improper withholding of it from the schedule.
 
 
 12
 On appeal the district court found that the bankruptcy court had erred in two respects. First, the assumption that the homestead exemption would have applied was inadequately supported because the state law then in force arguably did not preserve the homestead exemption after the dissolution of the marriage, and Ms. Dier had renounced her interest in the community property in 1976. Second, the district court held that the finding that there was no fraud was erroneous. It stated: "The record taken as a whole suggests, at the very least, the failure to schedule the judgment was negligent misrepresentation and possibly fraud as it is interpreted in the context of a revocatory action." It then reversed and remanded for further proceedings in the bankruptcy court.
 
 
 13
 On remand, the bankruptcy court revised its conclusion and found that the asset should have been scheduled. It also found that the Wards had a duty to inform the trustee that this asset existed and that the law firm of Hamilton & Carroll, which had originally obtained the judgment almost sixteen years earlier, had a continuing duty to inform the bankruptcy court that the judgment existed even though the firm did not handle the Wards' bankruptcy. It found that the firm's failure to notify the bankruptcy court amounted to negligent misrepresentation, and thus had assisted in the Wards' depriving the bankruptcy estate of this asset, rendering it subject to in solido liability. It did not find, however, that the firm had committed any fraud. It further found, though, that the firm was entitled to reasonable attorney's fees because it had secured property for its client in satisfaction of a judgment. It assigned a fee of fifty percent given the difficulty of collecting the judgment, and awarded Hamilton & Carroll about $12,000 from the proceeds. It assigned the remaining half to the new trustee, as a concealed asset of the Wards' estate, and held the law firm and the Wards liable in solido for this remainder.
 
 
 14
 On appeal, the district court affirmed the bankruptcy court's legal conclusions but questioned the award of one-half rather than one-third, of the recovered amount as attorney's fees. On remand, the bankruptcy court reduced the fee award to one-third after it found an agreement specifying that amount in the assignment of the judgment to the law firm. The final accounting gave the firm one-third and left it and Frank and Charlene Ward liable in solido to the trustee for the remaining two-thirds, or about $16,000. The district court affirmed this decision summarily. Only the law firm appeals. The trustee cross-appeals the award of attorney's fees to the law firm.
 
 II
 
 15
 As we have noted above, the law firm was held liable for the tort of negligent misrepresentation. The facts presented to us, however, do not suggest any affirmative misrepresentation on the part of the law firm whatsoever. The only basis, therefore, for a cause of action against the law firm for negligent misrepresentation must be based on the firm's having failed to satisfy some tort-based affirmative duty to supply information to the bankruptcy court. Because we find that this duty does not exist in tort as a matter of law, we reverse the judgment against Hamilton & Carroll.
 
 
 16
 In holding that Hamilton & Carroll had committed the tort of negligent misrepresentation, the bankruptcy court properly relied on state law, which is the 1898 Bankruptcy Act's scheme for identifying a debtor's prebankruptcy property and evaluating the bona fide nature of transfers of such property. See Bankruptcy Act of 1898 Sec. 70e; Matter of Lowery Brothers, Inc., 589 F.2d 851, 853 (5th Cir.1979); Commercial Credit Co. v. Davidson, 112 F.2d 54, 55 (5th Cir.1940). In Louisiana, as elsewhere, whether a duty exists is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). The tort of negligent misrepresentation occurs when there is a breach of the duty to supply correct information to the plaintiff. Dohmann v. United Gas Pipeline, 457 So.2d 307, 309 (La.App.1984). A duty to supply correct information exists when there is some existing fiduciary relationship between the party relying on information and the party negligently supplying it. Beal v. Lomas and Nettleton Co., 410 So.2d 318, 321 (La.App.1982). Although this duty has been extended to protect third parties with whom a supplier of information has no existing fiduciary relationship, this has been required only when information is voluntarily supplied on which a third party then relies.
 
 
 17
 Our research indicates that this duty has been most broadly construed in the case of Cypress Oilfield Contr. v. McGoldrick Oil, 525 So.2d 1157, 1162 (La.App.), writ denied, 530 So.2d 570 (1988). In Cypress Oilfield, a contractor performed a job for McGoldrick. The contractor then asked McGoldrick to delay payment. McGoldrick soon learned that much of the job had been subcontracted and that its account had been assigned to a bank. The bank wrote demanding payment, but McGoldrick was concerned about the contractor's financial stability. The bank's letter, its only contact with McGoldrick, however, explained that the assignment "in no way implies that the [contractor] is experiencing financial difficulties." In fact, the contractor was insolvent. Nevertheless, the letter reiterated that "the financial stability of our customer is not in jeopardy and this is merely a financing agreement to provide them with operating capital." McGoldrick paid the bank and was then held liable to a subcontractor, Cypress Oilfield, which had never been paid. When McGoldrick sued the bank, alleging negligent misrepresentation, the bank argued that it had no fiduciary duty to McGoldrick, with whom it had had no contact except the letter seeking payment. The court agreed, but found that when the bank "stated clearly that the financial stability of [the contractor] was not in jeopardy it assumed a duty to insure that the information volunteered was correct." Cypress Oilfield, 525 So.2d at 1162.
 
 
 18
 Our case today is fundamentally different from Cypress Oilfield, because here the party that allegedly made a negligent misrepresentation, the law firm, supplied no information whatsoever. Cypress Oilfield did not impose a duty to supply information, but a duty to ensure that information voluntarily supplied is correct. The case before us involves the duty to initiate a representation, not a duty to see that a representation voluntarily made is correct.
 
 
 19
 Naturally, if there is a duty to supply correct information it can be breached by omission as well as by affirmative misrepresentation. See Josephs v. Austin, 420 So.2d 1181, 1185 (La.App.1982), writ denied, 427 So.2d 870 (La.1983) (real estate broker who failed to disclose that house had a cracked slab liable to home buyers for negligent misrepresentation). This rule, however, only returns us to the central issue in the case: is there a duty to inform? With the exception of voluntarily made representations such as those at issue in Cypress Oilfield, the duty to supply correct information arises only when there is an existing fiduciary relationship between the parties. See Silver v. Nelson, 610 F.Supp. 505, 521 (D.C.La.1985) (defendant "created a special relationship with plaintiff [diamond merchant] when he undertook to aid the plaintiff in the sale of his merchandise," and thus was liable for negligently misrepresenting integrity of buyers); Beal v. Lomas & Nettleton Co., 410 So.2d 318, 321 (La.App. 4th Cir.1982) (insurer liable to insured for negligently misrepresenting, by omission, terms of new policy); Dohmann v. United Gas Pipeline, 457 So.2d 307, 309 (La.App.1984) (credit union liable to member's widow for negligently misrepresenting extent of credit life insurance).
 
 
 20
 Hamilton & Carroll simply had no relationship with either the bankruptcy court or the trustee that would give rise to a legal duty. Obviously the Wards, as debtors, were parties before the court and thus legally obligated to schedule the judgment. Their attorney in the bankruptcy proceeding, as an officer of the court, would certainly have had a duty to inform the court of its existence had he known of it. Hamilton & Carroll's only connection to the case, by contrast, was that it had originally obtained the judgment. There was no "special relationship" between the firm and either the bankruptcy court or the trustee, and neither party had any justifiable reason to rely on the lack of representations on the part of the law firm. We reiterate that there is no finding that Hamilton & Carroll engaged in any fraudulent conduct whatsoever with respect to this asset.
 
 
 21
 We can see situations in which some professional duty to the court may arise when a firm, even though not before the court, has actual knowledge that an outstanding asset of a bankrupt is being concealed. This duty, however, is, generally speaking, based in ethics, not in tort, and does not create a cause of action on the part of the trustee, absent an intent to defraud. As we have noted earlier, there was no finding that Hamilton & Carroll had actual knowledge that the asset was not scheduled, certainly not at the time of the bankruptcy filings. We have also noted that Hamilton & Carroll detailed the facts it knew to the bankruptcy trustee, who himself was free to inform the bankruptcy court. Although the former trustee had already been discharged in this case and so had no legal duty to inform the court of this asset, it is hard to countenance imposing the bankrupt's liability for an unscheduled asset on a law firm that had no part in the bankruptcy while ignoring a trustee who was charged with a duty to marshal the assets and whose timely action might have saved the asset for the estate.
 
 
 22
 Because we find that there was no duty on the part of Hamilton & Carroll to inform the bankruptcy court of the existence of this asset, there could have been no breach of this duty. The district court therefore erred in holding against the law firm based on the theory of negligent misrepresentation. Accordingly, the judgment against the firm is reversed.
 
 III
 
 23
 The trustee contests, on cross-appeal, the award of attorney's fees to Hamilton & Carroll. The bankruptcy court held that the firm had successfully collected the judgment, for which it was entitled to fair compensation. The trustee, however, claims that although the firm's work produced the money at issue, by defending this action it actually frustrated efforts of the bankruptcy estate to secure the proceeds and so is not entitled to fees. The trustee cites no authority but asks this court as a matter of equity to disallow the award of attorney's fees.
 
 
 24
 Although we have just decided that the firm committed no legal wrong in collecting the unscheduled judgment, the actual value of this service to the estate is now uncertain. This doubt arises because the judgment entered in this case against the Wards may be uncollectable and hence the services that Hamilton & Carroll rendered may have produced nothing for the estate. Thus, given the uncertain value of the judgment against the Wards, a remand is required in order to determine what, if any, fees are appropriate.
 
 
 25
 The estate owns the judgment that should have been scheduled in the bankruptcy proceeding. This judgment yielded roughly $24,000 in proceeds. The bankruptcy court found that Frank and Charlene Ward and Hamilton & Carroll injured the estate by the amount of the proceeds of which it had been deprived. The court simultaneously found, however, that Hamilton & Carroll performed a valuable service for the estate in collecting these proceeds and was entitled to fair compensation. It based fair compensation for its services to the estate on the agreement between the law firm and the Wards, i.e., one-third of the recovery. Thus, the injury the Wards and the firm caused the estate was reduced to the value of the judgment less attorneys fees, or about $16,000. Because the actions of both parties were found to have injured the estate, the Wards and the firm were held liable in solido to the estate for this amount.
 
 
 26
 We have held in Part II of this opinion that the basis upon which "in solido" liability of Hamilton & Carroll was founded, i.e., for negligent misrepresentation, cannot be sustained. No other defendants below having appealed, there is now a final judgment against Frank, Charlene, and Carlton Ward, holding them liable to the bankruptcy estate for about $16,000. Since the law firm obtained the proceeds upon which the judgment is based and, as we have just decided, committed no legal wrong in the process, there would appear little basis to set aside, as an abuse of discretion, the compensation granted for these services. This would leave Hamilton & Carroll with a fee of about $8,000.
 
 
 27
 Alas, like so many of the details in this case, there is a glitch. It was represented at oral argument that the law firm was the only solvent defendant. If the judgment is uncollectable, the firm has rendered a service to the estate that is considerably less valuable than it appeared when the fee was granted. If the firm is not entitled to its fee, which came from the proceeds of the judgment asset, these funds now in the hands of the law firm would revert to the estate. The firm might nevertheless be entitled to a portion of these funds for its services in obtaining at least this much for the estate. Because we can not evaluate the collectability of the judgment against the Wards and consequently cannot evaluate the value of the services rendered by Hamilton & Carroll to the estate, we must remand to the district court for consideration of what, if any, fees are appropriate in the light of our opinion today.
 
 IV
 
 28
 For the foregoing reasons, we hold that the holding of negligent misrepresentation on the part of Hamilton & Carroll is in error. We further hold that, because of this holding, the value of the services rendered by Hamilton & Carroll requires reevaluation. The judgment of the district court is therefore reversed and the case is remanded to the district court for further consideration of attorneys fees in accordance with this opinion.
 
 
 29
 REVERSED AND REMANDED.
 
 
 
 [1]
 Ward Brothers consisted of two equal partners, the brothers Frank and Carlton Ward. The judgment was for two separate debts of Clinton Smith, one owed to the partnership and the other to Frank individually. During the litigation, the defendants have treated all debts and assets involved as held equally by Frank and Carlton Ward, so we will do the same
 
 
 [2]
 Although the bankruptcy petition listed Frank as a partner in Ward Brothers, he appears to have been the only partner named. Given our treatment of the debts and assets noted in footnote 1, however, we need not resolve this ambiguity