PER CURIAM: *
Plaintiff-appellant Edward J. Schaum-burg was an independent insurance agent *435 for defendants-appellees State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Fire & Casualty Company, and State Farm General Insurance Company (collectively “State Farm”) for more than twenty years. Soon after his retirement, he brought suit against State Farm, claiming breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, and fraud. The district court granted State Farm’s motion for summary judgment and dismissed all of Schaumburg’s claims. We reverse the dismissal of the negligent misrepresentation claim, and affirm the dismissal of the other claims.
I. FACTS & PROCEEDINGS
A. Facts
Schaumburg was a State Farm insurance agent from 1981 until he retired in 2006. In 1981, Schaumburg entered into a written contract, the State Farm Agent’s Agreement (hereinafter “Agreement”), to solicit applications for State Farm insurance as an independent contractor, not as an employee. Either party could terminate the Agreement at any time by furnishing written notice to the other. The Agreement was silent as to any required procedures for or restrictions on Schaum-burg’s ability to relocate his office, other than stating that State Farm “anticipate[d] that in the location or relocation of [Schaumburg’s] office [Schaumburg would] not unduly infringe on the established office location of any other agent.”
Schaumburg worked out of his office in Chalmette, Louisiana from 1981 until August 2005, when that office and the surrounding area were destroyed by Hurricane Katrina. Schaumburg then set up a temporary office in Metairie, Louisiana. He was not required to sign a new contract or to relinquish his book of business while he was temporarily located in Me-tairie. According to Schaumburg, he did not want to stay in Metairie because it was crowded with other State Farm agents who had temporarily moved there after Katrina. He became interested in moving to Belle Chasse, Louisiana.
In September 2005, Schaumburg attended a meeting in Baton Rouge, Louisiana for State Farm agents. He claims that Timothy McFadden, State Farm’s Vice-President of Agency for Louisiana, told the agents in attendance that they would have to sign new contracts with State Farm if they wanted to relocate their agencies. Another topic addressed at the Baton Rouge meeting was a temporary special retirement plan that State Farm was making available to its agents, modifying its Early Notification Program (ENP) to allow agents to receive termination payments calculated on the basis of the commissions they had earned prior to Hurricane Katrina, rather than the lower commissions they would likely receive after Katrina. This favorable calculation of termination payments was made available only to agents who accepted the deal and agreed to retire by December 31, 2005. (That is, the date on which an agent entered into an agreement to retire had to be no later than the end of 2005; the actual date of retirement could be later.) A State Farm employee, Tracey Cemo, described the Baton Rouge meeting as follows: “[the agents] were told that if they moved locations that they would have to sign a new contract, but they were also told that if they were to retire, that they would have special packages set up if they decided to take early retirement.”
According to Schaumburg, signing a new contract in order to relocate was not a mere formality, but would have had a significant financial effect on him. The record includes testimony from other State Farm agents that the new contracts gave *436 agents lower commissions and retirement benefits compared to the older contracts such as the Agreement that Schaumburg signed with State Farm in 1981.
In his deposition, McFadden denied having told the agents that they would have to sign new contracts before relocating. Furthermore, McFadden denied that it was State Farm’s policy, between August 2005 and the end of 2005, to require agents to sign new contracts before they could relocate. McFadden said that at that time, if an agent wanted to relocate his office from Chalmette to Belle Chasse, the agent could do so without signing a new contract.
After learning that a State Farm agent in Belle Chasse was retiring, Schaumburg became interested in the possibility of taking over the retiring agent’s business. In November or December 2005, according to Schaumburg, Theresa Hollander, a State Farm Agency Field Executive, told him that, if he took over the existing agency office in Belle Chasse, he would have to sign a new contract and would not be able to bring his existing book of clients with him. In her deposition, Hollander denied having talked with Schaumburg about these topics.
As a result of these meetings with McFadden and Hollander, Schaumburg contends, State Farm effectively left him with only three options: (1) sign a new contract in order to relocate his existing business to Belle Chasse or anywhere else; (2) sign a new contract and give up his existing book of business in order to take over the retiring agent’s office in Belle Chasse[1]; or (3) retire under the special post-Katrina ENP. In December 2005, Schaumburg signed an agreement to retire under the special ENP, effective December 31, 2006. According to Schaumburg, his belief that he would be unable to move his business to Belle Chasse without signing a new contract was “a major factor in my decision-making process” leading to the decision to retire. When he retired at the end of 2006, Schaumburg was 62 years old. He claimed that he had previously planned to continue working “probably ten years” from January 2005. Thus, his decision to retire rather than go on working allegedly resulted in the loss of roughly eight years’ worth of income.
In November 2006, Schaumburg learned that another agent had relocated to Belle Chasse without being required to sign a new contract. That news prompted Schaumburg to file this suit against State Farm.
B. Proceedings
Schaumburg’s complaint asserted claims under Louisiana law for breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, and fraud. He alleged that State Farm had breached the Agreement by prohibiting him from relocating without signing a new contract. He also alleged that State Farm had either negligently or intentionally misrepresented its own policy governing the relocation of agents. He further alleged that State Farm’s actions caused him to lose revenue and resulted in a reduction of his retirement benefits. State Farm denied liability and moved for summary judgment.
*437 The district court granted State Farm’s motion for summary judgment and dismissed all of Schaumburg’s claims with prejudice. The district court dismissed the claims of breach of contract and breach of the duty of good faith and fair dealing because, “assuming the Plaintiffs factual allegations to be true, the Court does not find that the Defendants have breached any terms of the contract.” The court reasoned that the Agreement is silent as to whether an agent may relocate without signing a new contract or giving up his existing book of clients; therefore, “the Plaintiff does not identify any terms of the contract violated by State Farm’s purported action.”
The district court dismissed the claims of negligent misrepresentation and fraud because the court considered that “[tjhere is no evidence that the Plaintiff was provided with incorrect information. Although State Farm later instituted procedures for the relocation of agents without a new client book or contract, there is no evidence that the information that Plaintiff received was incorrect at the time that it was provided.” The court reasoned that because State Farm had not supplied incorrect information or misrepresented the truth, it could not be liable for negligent misrepresentation or fraud.[2] Schaumburg timely filed a notice of appeal.
II. ANALYSIS
A. Standard of Review
We review a district court’s grant of a motion for summary judgment de novo. Wiley v. State Farm Fire & Cas. Co., 585 F.3d 206, 210 (5th Cir.2009). The evidence and inferences from the record are viewed “in the light most favorable to the nonmov-ant.” Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir.2005). Summary judgment should be granted only if “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a). “Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party, here State Farm, has the burden of showing that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
B. Breach of Contract
Schaumburg claims that State Farm breached the Agreement by “[Refusing to allow [him] to relocate to Belle Chasse” without signing a new contract. Appellant’s Br. 18-19.[3] We must deter *438 mine, therefore, whether the Agreement gave Schaumburg a right to relocate his office and, if so, whether State Farm breached that right.
The Agreement states:
[State Farm] anticipate^] that in the location or relocation of [Schaumburg’s] office [Schaumburg] will not unduly infringe on the established office location of any other agent. [Schaumburg] agrees that [he] will not establish any office in addition to [his] principal office without prior approval of [State Farm],
Schaumburg contends that this provision gave him a right to relocate his office, subject to only two specified conditions: that his doing so must not “unduly infringe on” another agent’s established location and that he must not establish any additional offices without prior approval. State Farm counters that this provision did not affirmatively require it to allow Schaumburg to relocate to any particular area under any conditions, and that the absence of an explicit right “simply means that the right does not exist.” Appellees’ Br. 30-31.
Assuming for the sake of argument that this provision did create a right of relocation, Schaumburg still has not presented any evidence that State Farm prevented him from exercising this contractual right. Schaumburg claims that State Farm “refused” to allow him to relocate without signing a new contract. However, McFadden’s alleged announcement at'the Baton Rouge meeting does not in and of itself constitute a breach of the Agreement. State Farm did not take any action contrary to the terms of the Agreement; neither did it fail to perform any obligation required by the Agreement. Neither did Schaumburg ever make any affirmative attempt to relocate his office, so State Farm never could have breached the Agreement by interfering with his relocation.
At most, Schaumburg could argue that the statement attributed to McFadden was an anticipatory breach of contract, conveying that State Farm intended to impose a condition on Schaumburg in the future that would violate his rights under the Agreement.[4] However, an anticipatory breach must be “a refusal to perform” a contractual obligation. Andrew Dev. Corp. v. W. Esplanade Corp., 347 So.2d 210, 213 (La.1977). “Where a party refuses and does not merely fail or neglect to comply with his contractual obligation, his refusal constitutes an active breach of the contract which relieves the other party of the obligation of continuing to perform under the contract.” Id. at 212-13. “The principal] thesis of this doctrine is that an obligee has a cause of action when an obligor’s acts or omissions reduce his ability to execute, or signify his intent to repudiate, a contractual obligation.” Fairfield Dev. Co. v. Jackson, 438 So.2d 664, 671 (La.App.2d Cir.1983).
McFadden’s announcement at the Baton Rouge meeting, as described by Schaumburg, did not signify an intent to repudiate a contractual obligation. At most, the announcement can be understood as signifying State Farm’s intention to terminate Schaumburg’s contract if he relocated his business without first signing a new contract. However, that is not the same as an intention to breach the contract, because the Agreement permitted both Schaum- *439 burg and State Farm to terminate it at will.[5] Therefore, an announcement of State Farm’s intention to terminate the contract if Schaumburg relocated his office without first signing a new contract — if such an announcement was made — would not amount to an anticipatory breach. See Fullerton v. Scarecrow Club, Inc., 440 So.2d 945, 949 (La.App. 2d Cir.1983) (“[BJecause the defendant has not breached the contract or indicated an intent to do so, [the plaintiff] may not avail himself of the doctrine of anticipatory breach to seek remedies in contract against the breaching party....”). We affirm the district court’s dismissal of Schaumburg’s claim of breach of contract.
C. Breach of the Duty of Good Faith and Fair Dealing
Schaumburg claims that State Farm’s actions amounted to a breach of the obligation of good faith and fair dealing. Under Louisiana law, every contract implies an obligation of good faith performance. See La. Civ. Code art. 1983 (“Contracts must be performed in good faith.”). A breach of the duty of good faith and fair dealing requires a breach of a contract. “In order to establish that [State Farm] breached an implied covenant of good faith in connection with [the Agreement], [Schaumburg is] required to prove that [State Farm] violated that agreement with a dishonest or morally questionable motive.” Barbe v. A.A. Harmon & Co., 705 So.2d 1210, 1220 (La.App. 4th Cir.1998). See also Fertel v. Brooks, 832 So.2d 297, 306 n. 12 (La.App. 4th Cir.2002) (“Bad faith is not the mere breach of faith in not complying with a contract, but a designed breach of it from some motive of interest or ill will.”). Regardless of what State Farm’s motives may have been, Schaumburg cannot show that State Farm breached the duty of good faith and fair dealing because he has failed to show that the company breached any contractual obligation. Accordingly, we affirm the district court’s dismissal of this claim.
D. Negligent Misrepresentation
Schaumburg contends that State Farm committed negligent misrepresentation because when McFadden allegedly stated at the Baton Rouge meeting in September 2005 that agents would be required to sign new contracts before they could relocate their offices, he misinformed them about State Farm’s then-existing policy regarding relocation.[6] Under Louisiana law, *440 the tort of negligent misrepresentation has three elements: “(1) there must be a legal duty on the part of the defendant to supply correct information; (2) there must be a breach of that duty; and (3) the breach must have caused damages to the plaintiff.” Cypress Oilfield, Contractors, Inc. v. McGoldrick Oil Co., 525 So.2d 1157, 1162 (La.App. 3d Cir.1988) (citing La. Civ.Code arts. 2315, 2316; Dohmann v. United Gas Pipe Line, 457 So.2d 307 (La.App. 3d Cir.1984); Beal v. Lomas & Nettleton Co., 410 So.2d 318 (La.App. 4th Cir.1982)).[7]
The district court’s dismissal of Schaum-burg’s negligent misrepresentation claim was based on the second of these three elements: the court considered that there was “no evidence that the information that the Plaintiff received was incorrect at the time that it was provided.” However, it is undisputed in the record that at the time of the Baton Rouge meeting, State Farm’s policy was that agents were not required to sign new contracts before relocating their offices. McFadden testified to this in his deposition. And, because Schaumburg is the nonmoving party on summary judgment, we must accept his version of what McFadden said at the Baton Rouge meeting: that agents were required to sign new contracts before relocating their offices. Therefore, viewing the record in the light most favorable to Schaumburg, the evidence is sufficient to permit a rational trier of the facts to find that McFadden did provide Schaumburg with information that was incorrect at the time it was provided. Accordingly, contrary to the district court’s conclusion, there is a genuine factual dispute regarding the second element of negligent misrepresentation.
Consequently, we must go on to consider the remaining elements of the tort. We will next address the first element: whether, under the circumstances, State Farm had a duty to supply correct information to Schaumburg. “Louisiana negligent misrepresentation cases are evaluated using the duty-risk analysis.” Daye v. Gen. Motors Corp., 720 So.2d 654, 659 (La.1998). “The principal juridical element of an action in negligence is a duty, apparent to reason and common sense, to avoid acts and omissions which engender an unreasonable risk of harm to others.” Smith v. Roussel, 809 So.2d 159, 165 (La.App. 1st Cir.2001) (quoting Stephens v. State, Through Dep’t of Transp., 440 So.2d 920, 925 (La.App. 2d Cir.1983)). “Whether a duty is owed is a question of law.” Id. As part of the duty-risk analysis, the plaintiff must show that “the risk of harm was within the scope of protection afforded by the duty breached.” Id. at 164-65. “In determining the limitation to be placed on liability for a defendant’s substandard conduct, the proper inquiry is how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone. Absent an ease of association between the duty breached and the damages sustained, there is no legal fault.” Id. (citing Roberts v. Benoit, 605 So.2d 1032, 1045 (La.1991)). The Louisiana Supreme Court has held that a duty to provide correct information was “imposed *441 by law based upon policy considerations due to the tortfeasor’s knowledge of the prospective use of the information which expands the bounds of his duty of reasonable care to encompass the intended user.” Barrie v. V.P. Exterminators, Inc., 625 So.2d 1007, 1016 (La.1993). “The theme in [Louisiana cases on negligent misrepresentation] is that one is liable for negligent disclosure if he has superior knowledge and knows the other party is relying upon him for such knowledge.” Frank L. Ma-raist & Thomas C. Galligan, Jr., Louisiana Tort Law § 5.07[8] (2d ed. 2004) (citing Barrie; Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979); Cagle v. Loyd, 617 So.2d 592 (La.App. 3d Cir.1993)).
In this case, viewing the evidence in the light most favorable to the nonmoving party on summary judgment, it appears that State Farm had good reason to expect Schaumburg to use and rely on the information that was given to him at the Baton Rouge meeting. The purpose of that meeting appears to have been to inform agents about what their options were in the aftermath of Katrina. Agents were told about what they must do in order to relocate their businesses, and also about the option of retiring under the special post-Katrina ENP which State Farm made available to them until the end of 2005. It would be reasonable to expect those agents, including Schaumburg, to rely on the information they were given at that meeting as they made important decisions about their futures. According to Schaumburg, he was given incorrect information by McFadden and, in reliance on that information, made the decision to retire, thereby losing several years’ worth of income that he could have earned by continuing to work. If McFadden had correctly informed him that he could have relocated his business without signing a new (and unfavorable) contract, he would instead have continued to work and earn income. The harm that Schaumburg claims to have suffered due to the allegedly incorrect information was both foreseeable and easily associated with State Farm’s duty to provide correct information, because the information was presented in a context that led agents to rely on it in making decisions with important financial consequences. Therefore, under the duty-risk analysis, State Farm had a duty to provide correct information, and the risk of the harm that Schaumburg allegedly suffered was within the scope of protection afforded by the duty.
The only remaining element of negligent misrepresentation is that the breach of the duty to provide correct information caused damages to the plaintiff. Again, taking the evidence in the light most favorable to Schaumburg, his reliance on the allegedly incorrect information given to him by State Farm caused him to suffer financial harm because it induced him to make the decision to retire early instead of continuing to work and earn income. Under this version of the facts, Schaumburg plainly did suffer damages caused by State Farm’s breach of the duty to provide correct information. Cf., e.g., Barrie, 625 So.2d at 1008-09 (holding that plaintiffs who suffered financial losses because they unknowingly bought a termite-damaged building while relying on an incorrect termite inspection report could state a claim against the inspector for negligent misrepresentation).
In summary, State Farm could reasonably have expected Schaumburg to rely on the information he was given at the Baton Rouge meeting in making important decisions such as whether to retire; therefore, State Farm had a duty to provide correct information, and the risk of harm to Schaumburg was within the scope of protection afforded by that duty. The record, viewed in the light most favorable to Schaumburg, shows that State Farm *442 breached its duty when McFadden incorrectly informed Schaumburg at the Baton Rouge meeting that a then-existing company policy required him to sign a new contract before he could relocate his office. This breach of duty caused damages to Schaumburg because he relied on the incorrect information when he made the decision to retire and forgo several years’ worth of income. Therefore, Schaumburg has put forth summary judgment evidence establishing that there is at least a disputed question of material fact as to each of the elements of the tort of negligent misrepresentation. We must reverse the district court’s grant of summary judgment in State Farm’s favor on this claim.
E. Fraud
Schaumburg has also brought a claim of fraud which is likewise predicated on the allegedly wrong information given by McFadden at the Baton Rouge meeting. “Louisiana jurisprudence indicates that the following are the elements of the tort of fraud: 1. a misrepresentation of material fact; 2. made with the intent to deceive; 3. reasonable or justifiable reliance by the plaintiff; and 4. resulting injury. The intent to deceive is a specific intent.” Wooley v. Lucksinger, 14 So.3d 311, 378-79 (La.App. 1st Cir.2008); see also La. Civ. Code art. 1953; Guidry v. U.S. Tobacco Co., 188 F.3d 619, 627 (5th Cir.1999). The elements of fraud are similar to those of negligent misrepresentation, but with the addition of the specific intent to deceive. Wooley, 14 So.3d at 379. “Fraud ... may be established by circumstantial evidence.” La. Civ.Code art. 1957; accord Lafayette Ins. Co. v. Pennington, 966 So.2d 136, 138 (La.App. 2d Cir.2007).
State Farm argues that the company gained nothing from Schaumburg’s retirement, so it had no motive to intentionally deceive him into retiring. We need not decide whether the evidence in the record permits a rational inference that State Farm (through McFadden) intended to deceive Schaumburg, because Schaumburg has waived this issue by failing to brief it on appeal. See Fed. R.App. P. 28(a)(9)(A) (appellate briefs must contain “contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies”); United States v. Thames, 214 F.3d 608, 612 n. 3 (5th Cir.2000) (when a party fails to adequately brief an issue, the issue is waived). His brief contains a few general references to the fraud claim, but no specific argument regarding intent to deceive. We therefore affirm the district court’s dismissal of the fraud claim.
III. CONCLUSION
Schaumburg has demonstrated that the evidence in the record shows at least genuine disputes of material fact regarding all the elements of his claim of negligent misrepresentation. Accordingly, we REVERSE the district court’s dismissal of that claim, AFFIRM the district court’s dismissal of Schaumburg’s other claims, and REMAND the case for further proceedings.

 Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

. Schaumburg's brief often fails to clearly distinguish between these first two alternatives. He sometimes complains that State Farm required him to give up his existing book of business in order to relocate his office at all. However, the evidence in the record does not support this contention. Rather, the record contains evidence that (1) McFadden told Schaumburg he would have to sign a new contract in order to relocate his office, and (2) Hollander told Schaumburg he would have to sign a new contract and give up his existing book of clients if he toolc over the retiring agent’s business in Belle Chasse.

. Schaumburg also asserted a claim of tor-tious interference with contract, which the district court dismissed because Schaumburg himself conceded that "recovery for tortious interference with contract is not available based on the facts and law at issue in the instant case.” On appeal, Schaumburg does not contest the district court’s dismissal of this claim.

. Schaumburg asserts in his brief that State Farm also refused to allow him to relocate while retaining his book of business. But, in his deposition, Schaumburg testified that Hollander told him he would have to give up his book of business only if he wanted to take over the retiring agent's business in Belle Chasse. There is no testimony or evidence in the record that anyone ever told Schaumburg that he would have to give up his book of business if he simply relocated his own office.
What Schaumburg did testify to, however, was that McFadden announced to all of the agents at the Baton Rouge meeting that they would have to sign new contracts if they relocated their offices. Therefore, we will only address Schaumburg’s arguments that are based on State Farm’s alleged refusal to let him relocate his office without signing a new contract.
*438 Schaumburg lias not identified any provision of the Agreement that even arguably gave him a right to take over another agent's business while also keeping his existing book of business; therefore, Hollander’s alleged statement to him on this matter cannot have amounted to a breach of contract.

. Louisiana recognizes the concept of anticipatory breach. See, e.g., Marek v. McHardy, 234 La. 841, 101 So.2d 689, 695 (1958) ("[W]e deduce that an anticipatory breach of contract is actionable in Louisiana.”).

. The Agreement declared: “You or State Farm have the right to terminate this Agreement by written notice delivered to the other or mailed to the other’s last known address.” Schaumburg argues that the Agreement permitted State Farm to terminate agents only for cause, not at will, because it provided for a review procedure: "In the event we terminate this Agreement, you are entitled upon request to a review in accordance with the termination review procedures approved by the Boards of Directors of the Companies, as amended from time to time.” However, courts have consistently held that this particular contractual language does not limit State Farm’s right to terminate agents at will. E.g., Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 778 (9th Cir.2003) (“On the contrary, the Termination Review Provision suggests Stale Farm's desire to prevent arbitrary terminations without limiting its legal entitlement to terminate at-will by written notice.”); Olander v. State Farm Mut. Auto. Ins. Co., 317 F.3d 807, 810-12 (8th Cir.2003) (en banc). Schaumburg's brief cites no cases in which courts have interpreted this contractual language as preventing at-will termination.

. Schaumburg’s brief also seems to argue that Hollander's telling him that he would have to give up his existing book of business in order to take over the retiring agent’s business in Belle Chasse amounted to negligent misrepresentation (or perhaps fraud). However, Schaumburg has not identified any evidence in the record that this statement by Hollander was an inaccurate description of State Farm’s then-existing policies toward its agents. Be *440 cause there is no evidence that this statement was incorrect, Schaumburg’s claims of negligent misrepresentation and fraud cannot be predicated on it. Accordingly, we focus on McFadden’s alleged statement at the Baton Rouge meeting.

. The Louisiana Supreme Court's "jurisprudence has ... limited negligent misrepresentation tort theory to cases wherein contract or fiduciary relationship exists.” Daye v. Gen. Motors Corp., 720 So.2d 654, 659 (La.1998). This limitation does not bar Schaumburg's claim, since there was a contractual relationship between him and State Farm at the relevant time.