**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-30957.

AMERICA'S FAVORITE CHICKEN COMPANY, Plaintiff-Appellee,

v.

CAJUN ENTERPRISES, INC.;  et al.,  Defendants,

Cajun Enterprises, Inc.;  Harriet Sandy Anaya, individually, Defendants-Appellants,

v.

Alvin C. Copeland;  New Orleans Spice Company;  My Favorite Year, Inc., Third Party-Defendants-Appellees.

Dec. 17, 1997.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before GARWOOD, DUHÉ and DeMOSS, Circuit Judges.

PER CURIAM:

Appellants Cajun Enterprises, Inc. ("CEI") and Harriet Anaya[1] appeal the district court's dismissal of their counterclaims and third party demands.  We affirm.

BACKGROUND

In the mid-1980s, Appellee America's Favorite Chicken Company ("AFC") licensed four Popeye's Fried Chicken Franchises to CEI, a California corporation, for operation in the San Francisco area. The franchise agreements required CEI, *inter alia,* to pay royalties to AFC and to make contributions to an advertising fund that would

---

[1]Anaya was CEI's president and the personal guarantor of CEI's obligations under the franchise agreements.  Unless otherwise indicated, references to "CEI" include Anaya as well.

serve the entire Popeye's nationwide franchise system. AFC sued CEI in 1989 to recover past due royalties and advertising contributions.

CEI filed a series of counterclaims against AFC, alleging various fraud, breach of contract, and state statutory claims under both Louisiana and California law. CEI also made third party demands against Alvin C. Copeland, Sr., New Orleans Spice Company ("NOSC"), and My Favorite Year, Inc. ("MFY"), alleging intentional interference with contract.

The district court granted in part AFC's motions for summary judgment, dismissing CEI's claims under the California Franchise Investment Law ("CFIL"), the Louisiana Unfair Trade Practices Act ("LUTPA"), and several fraud and breach of contract claims. The court also dismissed all third party claims against NOSC and MFY. Several fraud and breach of contract claims went to the jury, however, as well as the tortious interference claim against Copeland. The jury found in favor of AFC on its claims and in favor of AFC and Copeland on all of CEI's counterclaims and third party claims. CEI now appeals.

## DISCUSSION

### I.

CEI claims that AFC breached the franchise agreements by failing to allocate sufficient advertising funds to CEI's local market. The district court dismissed this claim based on language in the franchise agreements vesting in AFC complete discretion over advertising fund allocation. We agree with the district court. The franchise agreements commit advertising placement to the "sole

discretion" of AFC. *See Clark v. America's Favorite Chicken Co.,* 110 F.3d 295, 298 (5th Cir.1997). Furthermore, AFC's discretion is not overridden, as CEI contends, by any language either in the Uniform Offering Circulars submitted to CEI or in Popeye's Confidential Operations Manual. Those documents actually underscore the fact that advertising fund distribution is a "corporate decision" committed wholly to AFC's discretion.

## II.

The district court granted AFC's motion for summary judgment on CEI's claim that AFC breached the franchise agreements by failing to provide "continuing advisory assistance" in the operation of the franchises. Again, we agree with the district court that the franchise agreement vested complete discretion in AFC over this matter. The agreements provide that AFC "will make available such continuing advisory assistance ... *as [AFC] may deem appropriate.*" (emphasis added).

We also reject CEI's contention that AFC's deficient advisory assistance violated the "implied covenant of good faith and fair dealing" implied in every Louisiana contract. *See* La. Civ.Code Ann. art. 2055 (West 1987); La. Civ.Code Ann. art.1965 (repealed)(West 1977). In *American Bank & Trust of Coushatta v. F.D.I.C.,* 49 F.3d 1064 (5th Cir.1995), we found that to prove a breach of the implied covenant of good faith and fair dealing under current Louisiana law, a plaintiff must show an "intentionally malicious failure to perform." *Id.* at 1068; *see also* La. Civ.Code Ann. art.1997 cmt. c (West 1987). CEI's evidence, particularly the testimony of former AFC Franchise District Manager Mary Ann Grybow,

fails to demonstrate AFC's intentionally malicious failure to render advisory assistance.

                            III.

The district court dismissed CEI's claim under the CFIL, Cal. Corp.Code § 31.000 *et seq.,* based on its finding that Louisiana, rather than California, law applied to this issue.[2] CEI maintains that the district court erred in applying Louisiana law because the parties' choice of law clause does not apply to the CFIL claims and because California has a greater interest in having its law applied to this issue. We decline to reach the conflict of laws issue because we find that, in any event, CEI could not prevail on its CFIL claims.

We note initially that the parties' choice of law clause does not mandate application of Louisiana law to this issue. The choice of law clause in the franchise agreements provides that the "Franchise Agreement[s] shall be interpreted and construed under the laws of the State of Louisiana, which shall prevail in the event of any conflict of laws." On its face, the choice of law clause is restricted to the *interpretation* or *construction* of the franchise agreements. *Caton v. Leach Corp.,* 896 F.2d 939, 943 & n. 3 (5th Cir.1990); *AAA Delivery, Inc. v. Airborne Freight Corp.,* 646 So.2d 1113, 1116 (La.App. 5th Cir.1994). *See also Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.,* 890 F.2d 165, 171 (9th Cir.1989). Since the CFIL claims do not implicate the

_____

[2]It is somewhat ambiguous whether the district court applied Louisiana law based on the parties' choice of law clause or based on an interest analysis under the Restatement (Second) of Conflicts. This is immaterial, however, since we find that applying California law to this dispute would not avail CEI.

interpretation or construction of the franchise agreements, they are not governed by the narrow choice of law clause present here. *See Cottman Transmission Systems, Inc. v. Melody,* 869 F.Supp. 1180, 1188 n. 4 (E.D.Pa.1994).

CEI seeks damages and rescission of the franchise agreements under CFIL §§ 31,300 and 31,301. CEI must show that AFC "willfully" made an "untrue statement of material fact" in an application, notice or report filed with the California Commissioner of Corporations (or willfully omitted a material fact therein). CFIL § 31,200. Alternatively, CEI must show that AFC offered or sold a franchise in California "by means of any written or oral communication not enumerated in Section 31,200 which includes an untrue statement of material fact" (or omits a material fact therefrom). CFIL § 31,201. Specifically, CEI contends that AFC violated the CFIL by (1) failing to disclose "certain material civil actions" filed against AFC; (2) falsely representing that it had not, within the last ten years, been subject to any "material complaint or legal proceeding"; (3) falsely representing that it did not provide prospective franchisees with sales and profit forecasts; and, (4) omitting to state that it provided such information to prospective franchisees.[3]

We find that, even if allowed to proceed under the CFIL, CEI could not prevail. The posture in which CEI presents its CFIL claims shows that they are largely a recapitulation of the

---

[3]CEI alleges that these false representations and material omissions occurred both in AFC's registration with the California Commissioner of Corporations and in the Offering Circulars and other materials provided to CEI.

Louisiana fraud claims already presented to the jury. The jury specifically found that AFC's failure to disclose franchise-related litigation was not material to CEI. Further, as the district court found, the disclaimer clause in the franchise agreements states that CEI was not induced to execute the agreements by any extra-contractual representations. The misrepresentations and omissions upon which CEI bases its CFIL claims thus could not have been "material."

We therefore affirm the district court's dismissal of the CFIL claims, albeit for different reasons.

IV.

CEI argues the district court erred when it applied Louisiana law to CEI's intentional interference with contract claims and when it dismissed third-party defendants NOSC and MFY on finding that Louisiana does not recognize an intentional interference claim against corporate defendants. CEI alleged that Al Copeland, NOSC and MFY engaged in a scheme to inflate the prices of Popeye's products that CEI was contractually bound to purchase, thus making CEI's performance of the franchise agreements more burdensome. The jury exonerated Al Copeland on the tortious interference claim.

We assume without deciding that California's more expansive tortious interference claim would encompass actions against NOSC and MFY, *see, e.g., Pacific Gas and Electric Company v. Bear Stearns & Company,* 50 Cal.3d 1118, 270 Cal.Rptr. 1, 791 P.2d 587, 589-90 (Ca.1990), because we find, in any event, that Louisiana law should apply to this issue and, further, that Louisiana would not recognize a cause of action against NOSC and MFY under these facts.

Because CEI filed its third party demands before January 1, 1992, we apply Louisiana's pre-codification conflicts law to this issue. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Book IV, La. Civ.Code Ann.(West 1994); 1991 La. Acts No. 923, § 4. Before Louisiana's conflicts codification, Louisiana courts generally applied a combination of Professor Brainerd Currie's "interest analysis" and the "most significant relationship" test of the Restatement (Second) of Conflicts. *Jagers v. Royal Indemnity Company,* 276 So.2d 309, 312-13 (La.1973); *Sandefer Oil & Gas v. AIG Oil Rig of Texas, Inc.,* 846 F.2d 319, 322-24 (5th Cir.1988).

We find that this case presents a "true conflict." *See Sandefer Oil & Gas,* 846 F.2d at 322-23; *see generally* B. Currie, *Selected Essays on the Conflict of Laws* (1963). California has an interest in applying its expansive tortious interference law to protect California franchisees, while Louisiana has a countervailing interest in applying its limited cause of action to, and thus shielding from unrecognized liability, Louisiana corporations. *See 9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228, 234 (La.1989); *Brinkley & West, Inc. v. Foremost Insurance Co.,* 499 F.2d 928, 934 (5th Cir.1974); *Ardoyno v. Kyzar,* 426 F.Supp. 78, 82 (E.D.La.1976).

We are persuaded that, with respect to this issue, Louisiana has the "most significant relationship" to the parties and the transactions allegedly giving rise to liability. *See Restatement (Second) of Conflicts* §§ 6 and 145 (1971). Louisiana's limited tortious interference action is, in part, a rule proscribing

certain conduct. *See 9 to 5 Fashions,* 538 So.2d at 231. The state in which such conduct took place (i.e., the alleged overpricing scheme occurring in Louisiana) is therefore an important contact for conflicts purposes. *See Restatement,* § 145 cmt. e. We are further guided by the more recent expressions of Louisiana's conflicts policies contained in Book IV of the Louisiana Civil Code. Although Louisiana's Conflicts articles technically do not apply to an action filed before January 1, 1992, we are at least persuaded by article 3543, which would apply Louisiana law to an "issue of conduct and safety" where the injury-causing conduct occurred in Louisiana and was caused by a Louisiana domiciliary. La. Civ.Code Ann. art. 3543 & cmt. a (West 1994); *see* Symeon Symeonides, *Louisiana Conflicts Law: Two "Surprises",* 54 La.L.Rev. 497, 595 n. 41 (1994).

Louisiana's recent recognition of the tortious interference action, after nearly one hundred years of disallowing it, also evidences a policy of cautious expansion of the tort and a reluctance to apply wholesale its "rather broad and undefined" common law version. *See 9 to 5 Fashions,* 538 So.2d at 234, *quoting* W. Page Keeton *et. al,* Prosser & Keeton on the Law of Torts § 129, at 979 (5th ed.1984). Thus, quite apart from its interest in deterring tortious conduct, Louisiana also has an interest in shielding its domiciliary corporations from expansive tortious liability Louisiana has not yet adopted, particularly for conduct occurring within its borders.

We recognize California's interest in providing redress to its domiciliary franchisees allegedly injured there. We find,

nonetheless, that Louisiana has the more "significant relationship"[4] to the parties and the transaction where the issue involves Louisiana's limited tortious interference action, defendants domiciled in Louisiana, and, most importantly, allegedly tortious conduct occurring within Louisiana.[5] We thus find that Louisiana law should apply to CEI's tortious interference claims against NOSC and MFY.

Our Court and various Louisiana courts of appeal have uniformly recognized the narrowness of Louisiana's tortious interference action. *See, e.g., American Waste & Pollution Control Co. v. Browning-Ferris, Inc.,* 949 F.2d 1384, 1386-87 (5th Cir.1991); *White v. White,* 641 So.2d 538, 541 (La.App. 3d Cir.1994); *Tallo v. The Stroh Brewery Co.,* 544 So.2d 452, 453-55 (La.App. 4th Cir.1989). Even Louisiana appellate courts purporting to "expand" the cause of action have done so within the limited confines of the *9 to 5 Fashions* decision. *See, e.g., Guilbeaux v.*

---

[4]While we are guided by its reasoning, we distinguish *Brinkley & West* on its facts. That case involved Louisiana plaintiffs suing for interference occurring in other states with contracts perfected and to be performed outside Louisiana. *Brinkley & West,* 499 F.2d at 934-35 & n. 28. Compare *Ardoyno,* where the district court found Louisiana law applicable to a tortious interference claim on a contract with a Mississippi domiciliary "made and performable" within Louisiana. *Ardoyno,* 426 F.Supp. at 81-82. While not precisely on point, *Ardoyno* is closer to the present situation, given that the franchise agreements were at least in part made and "performable" in Louisiana.

[5]The district court allowed the tortious interference action to proceed against Al Copeland, Sr., the owner of NOSC and MFY. Deposition testimony in the record showed that the alleged price-inflation scheme was carried out largely pursuant to Copeland's directives. Thus, it seems that California's deterrence and compensation policies were at least partially vindicated in this case; the jury, however, found that Copeland's actions did not unjustifiably burden CEI's franchise agreements with AFC.

*The Times of Acadiana,* 693 So.2d 1183, 1186 (La.App. 3d Cir.1997); *Neel v. Citrus Lands of Louisiana, Inc.,* 629 So.2d 1299, 1301 (La.App. 4th Cir.1993). Under the present facts, CEI's tortious interference claim against NOSC and MFY does not fall within the narrow parameters set forth by the Louisiana Supreme Court in *9 to 5 Fashions, see* 538 So.2d at 234, and not since broadened.

We have recognized that before a Louisiana court will allow a tortious interference action, the plaintiff must identify a duty existing between it and the alleged tortfeasor, the violation of which would give rise to delictual liability. *See American Waste,* 949 F.2d at 1390; *see also 9 to 5 Fashions,* 538 So.2d at 231; *Spencer-Wallington, Inc. v. Service Merchandise, Inc.,* 562 So.2d 1060, 1063 (La.App. 1st Cir.1990). For example, a corporate officer owes a duty to a third person contractually related to the corporation to refrain from intentional actions that would make the corporation breach the contract or render its performance more burdensome. *See 9 to 5 Fashions,* 538 So.2d at 231.

CEI has not identified any duty owed it by either NOSC or MFY that would bring those corporations within the purview of Louisiana's tortious interference cause of action. While NOSC and MFY may have been closely affiliated to AFC through Al Copeland, Sr., CEI has not demonstrated, nor can we discern, any relationship between the alleged tortfeasors and CEI that would give rise to the requisite duty. *See American Waste,* 949 F.2d at 1390. We believe that a Louisiana court would have done what the district court here did: allow the tortious interference claim to proceed against the corporate officer, Al Copeland, Sr., whose duty it was not to

interfere with the franchise agreements between AFC and CEI. The jury found Copeland had not interfered with the franchise agreements, and we decline to allow CEI to relitigate the same issue against different defendants, particularly when deposition testimony in the case indicated any alleged overpricing scheme was done pursuant to Copeland's own guidelines.

Thus, we affirm, for slightly different reasons, the district court's dismissal of CEI's tortious interference claims against NOSC and MFY.

V.

CEI based its LUTPA claims against AFC on the overpricing scheme allegedly orchestrated by AFC, NOSC and MFY. The district court read the LUTPA limitations period[6] as "preemptive" and dismissed the claims as time-barred. CEI argues the district court erred by not considering that the allegedly tortious scheme was a "continuing violation" that did not abate until 1994; only at that time, according to CEI, did the one-year LUTPA period begin to run.

The district court relied on *Neill v. Rusk,* 745 F.Supp. 362, 365 (E.D.La.1988) in holding that the "continuing violation" doctrine did not apply to the LUTPA preemptive period. Two recent Louisiana appellate decisions, however, have found that where a

_____

[6]The LUTPA limitations period reads:

> The action provided by this section shall be prescribed by one year running from the transaction or act which gave rise to this right of action.

La. Stat. Ann. 51:1409(E)(West 1987). Louisiana courts have interpreted this period to be preemptive rather than prescriptive. *See, e.g., Spencer-Wallington,* 562 So.2d at 1063.

violation of LUTPA is "continuing" (i.e., where the violation gives rise to a new cause of action every day), the peremptive period does not begin to run until the violation ceases. *See Benton, Benton and Benton v. Louisiana Public Facilities Authority,* 672 So.2d 720, 723 (La.App. 1st Cir.1996); *Fox v. Dupree,* 633 So.2d 612, 615 (La.App. 1st Cir.1993).

We assume without deciding that the "continuing violation" doctrine applies to the LUTPA peremptive period, because we find, in any event, that CEI's LUTPA claims would fail on the merits. A trade practice is unfair "when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers...." *American Waste,* 949 F.2d at 1391, *quoting Roustabouts, Inc. v. Hamer,* 447 So.2d 543, 548. What constitutes an unfair trade practice is determined by the courts on a case-by-case basis. *American Waste,* 949 F.2d at 1391.

While CEI's LUTPA claims are rather amorphous, the only allegations that could possibly survive the one-year limitation period (aided by the "continuing violation" doctrine) are those surrounding the alleged overpricing scheme. These claims essentially revisit CEI's tortious interference claims, albeit against a different defendant. As we have observed *supra,* the jury has already rejected CEI's tortious interference claims against the only possible defendant under Louisiana law. We decline to allow CEI to rehash those claims against different parties, nor do we accept its implicit invitation to recognize a cause of action under LUTPA not otherwise actionable under Louisiana law. *See American Waste,* 949 F.2d at 1392.

We thus affirm, for alternate reasons, the district court's dismissal of CEI's claims under LUTPA.

VI.

The district court granted AFC's motion for summary judgment on CEI's fraud claims based on allegations that AFC fraudulently induced CEI to enter the franchise agreements by misrepresenting sales figures, expenses and profits regarding the San Francisco area stores. The court found that the integration/disclaimer clauses in the franchise agreements prevented CEI from justifiably relying on any extra-contractual representations allegedly made by AFC. CEI argues that the integration/disclaimer clauses cannot insulate AFC from its own fraudulent misrepresentations.

We need not address the effect of those clauses, because we find that the allegedly fraudulent statements made to CEI are not actionable as a matter of law. Under Louisiana law, a cause of action exists for fraudulent misrepresentation of *past* or *present* facts; "unfulfilled promises or statements as to *future* events," however, cannot be the basis for a fraud action. *Watermeier v. Mansueto,* 562 So.2d 920, 923 (La.App. 5th Cir.1990)(emphasis added); *see* La. Civ.Code Ann. arts.1953 *et seq.* (West 1987).

According to CEI, AFC stated that CEI *could expect* sales similar to those in the Washington, D.C. area given the demographic similarities between the markets, and that sales *would definitely increase* in the San Lorenzo Store if CEI ran it properly.[7] These statements are nothing more than projections of future events and,

_____

[7]CEI does not allege that AFC misrepresented *present* sales figures for any of the locations.

as such, are not actionable as fraud under Louisiana law. We therefore affirm, for alternate reasons, the district court's grant of summary judgment.

The district court also granted AFC summary judgment as to CEI's claims that AFC committed fraud by failing to disclose certain equipment problems with one of the locations and by failing to inform CEI that a competitor of Popeye's was planning to relocate next to another location. Under Louisiana law, "[t]o find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information." *Greene v. Gulf Coast Bank,* 593 So.2d 630, 632 (La.1992). Such a duty could arise from statute, or from a special relationship between the parties, such as a fiduciary relationship. *Id.* at 633. We have observed before, however, that a franchisor and a franchisee are not ordinarily considered fiduciaries in Louisiana. *See, e.g., Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 975 F.2d 1192, 1205 (5th Cir.1992).

We agree with the district court that CEI has failed to identify any duty on AFC's part that would have required it to disclose the facts CEI complains of. First, as already discussed, CEI and AFC were not in a fiduciary relationship. Second, CEI is a relatively sophisticated consumer with the ability to independently investigate the condition of the locations it planned to take over. *See Greene,* 593 So.2d at 633. Finally, AFC was only indirectly involved in the purchase of the two locations in question; CEI actually bought them from a third-party franchisee, Natraj Corporation.

Since we find AFC had no duty to disclose the information, we

affirm the district court's grant of summary judgment in favor of AFC.

## VII.

For the foregoing reasons, we AFFIRM the district court's dismissal of, and grant of summary judgment on, CEI's counterclaims and third party demands.