**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-50141

DIVERSE-RIMCO, a Texas General Partnership

Plaintiff-Appellant,

VERSUS

PHILLIPS PETROLEUM, COMPANY, a Delaware Corporation

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Texas

(A-98-CV-782-JN)

June 25, 2001

Before GARWOOD, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff, Diverse-RIMCO ("Diverse"), appeals the district court's order granting summary judgment to Defendant, Phillips Petroleum Company ("Phillips"), denying summary judgment to Diverse, and dismissing the case. After reviewing the record and the briefs, we AFFIRM the judgment of the district court.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

## FACTS AND PROCEDURAL HISTORY

Phillips is a nonoperating working-interest owner in an offshore oil and gas production unit known as Ship Shoal 113. Diverse, an investment partnership that was formed in 1991 to purchase a package of nonoperating oil and gas interests, purchased a net-profits interest from Continental Oil Company ("Conoco") that burdens Phillips's working interest. Diverse's interest is a percentage of the profit, if any, from the production of oil and gas from Ship Shoal 113, after expenses. The net-profits interest that Diverse owns is governed by a 1960 Agreement (the "1960 Agreement") entered into by Conoco and three other oil companies. The 1960 Agreement provides that losses covered by insurance are not to be charged to the net-profits account and that the costs of insurance to protect against such loss or damage are properly charged as expenses to the net-profits account.

To protect its nonoperating working interest, Phillips obtained property insurance with the OIL Limited Insurance Company ("OIL"), a consortium of approximately forty-five oil companies that provides property insurance to its shareholders. In 1992, Phillips also decided to purchase property insurance with Sooner, its wholly owned and captive insurance company. Phillips, as a shareholder in OIL, was allowed to name Sooner as a joint policyholder under its OIL policy. Phillips used Sooner as the

principal cash-flow and accounting vehicle for all losses incurred by Phillips-owned assets. In other words, Sooner facilitated Phillips's corporate insurance and risk management programs and handled the payments of Phillips's premiums to OIL.

Under the OIL policy, Phillips is assessed a retrospective premium or penalty when a claim is made against the insurance.[2] Phillips funds the payment of the penalty (as with its other premiums to OIL) through Sooner. Sooner is then reimbursed by assessing the cost of the penalty to the business division that suffered the property loss. According to Phillips, one of the purposes of this penalty is to encourage the managers of Phillips to undertake aggressive loss-prevention measures. The amount of the penalty is determined by the cost of the claim actually paid spread over five years.

On August 25, 1992, Ship Shoal 113 suffered damage from Hurricane Andrew. OIL made payments on Phillips's claim, and Sooner began to pay the retrospective premium. On January 15, 1993, Phillips entered into a Premium Agreement (the "Premium Agreement") with Sooner to apply its reimbursement policy to the Hurricane Andrew situation. According to Phillips, its original plan was not to charge Ship Shoal 113 the costs of repairs and not

---

[2] According to the deposition given by John Giavarini, Senior Vice President of OIL, only 40% of the losses that Phillips incurred are recovered by the retrospective premium method. The other 60% were funded through a different method whereby individual members are charged a rate equal to the ratio of losses accumulated over a five-year period and then divided by assets at a fixed time.

to credit the insurance proceeds to the net-profits account. At Diverse's request, however, Phillips charged the cost of the insurance to the net-profits account so that Diverse could receive the benefits of the insurance proceeds. Accordingly, Sooner paid the penalty and charged the loss to the North America E & P Strategic Business Unit, the division that owns Ship Shoal 113. When Phillips received proceeds from OIL, they were credited as revenues to the net-profits account.

In 1998, Diverse filed this suit claiming that Phillips breached the 1960 Agreement by charging the retrospective premium to the net-profits account. Cross-motions for summary judgment were filed. On January 25, 2000, the district court granted Phillips's motion for summary judgment and denied Diverse's cross-motion. The district court then entered a final judgment dismissing Diverse's claims with prejudice. Diverse timely appeals to this court.

**STANDARD OF REVIEW**

"We review de novo the district court's grant or denial of a motion for summary judgment, viewing the facts and all reasonable inferences therefrom in the light most favorable to the non-moving party." St. Paul Mercury Ins. Co. v. Fair Grounds Corp., 123 F.3d 326, 338-39 (5th Cir. 1996) (citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 266 (5th Cir. 1995)). Summary judgment

4

is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "When reviewing the pleadings, depositions, admissions, answers to interrogatories, and affidavits, the court must draw all reasonable inferences in favor of the non-moving party." Russ v. Int'l Paper Co., 943 F.2d 589, 590 (5th Cir. 1989) (per curiam) (citing Randolph v. Laeisz, 896 F.2d 964, 969 (5th Cir. 1990)).

**ANALYSIS**

In challenging the district court's order granting summary judgment to Phillips and denying summary judgment to Diverse, Diverse raises three main arguments: (1) that Phillips breached the 1960 Agreement by charging the retrospective premium to the net-profits account, (2) that Phillips breached the implied duty of good faith and fair dealing under the 1960 Agreement, and (3) that the Premium Agreement was void for lack of consideration.

First, Diverse argues that although Phillips was authorized under the 1960 Agreement to deduct from production revenues "the cost of any insurance premiums paid to insure against . . . damage or loss," the penalty provision is not such an "insurance premium." Diverse argues that the retrospective premium was a penalty charged

5

to Sooner by OIL and that Phillips's decision to reimburse Sooner was a voluntary assumption of Sooner's liability that could not be properly assessed to the net-profits account. Diverse contends that Phillips could charge only the cost of issuance of the Sooner policy to the net-profits account.

The 1960 Agreement unambiguously allows Phillips to charge the cost of insurance to the net-profits account. Both paragraphs X and XIV make this clear:

> The cost of the insurance which Odeco[3] and Burmah[4] are obligated to carry hereunder, <u>the cost of such other insurance as said parties may carry</u>, the deductibles of such insurance, losses suffered or not recovered because of insufficiency, inadequacy or failure of such insurance, <u>shall be a proper charge . . . in determining net profits</u> as hereinafter provided.

Paragraph X (emphasis added).

> There shall be no net profits . . . until Odeco and Burmah shall have been fully reimbursed from the production from the applicable premises <u>for all of their operating and development costs of every kind and character</u> properly chargeable to the development, operation, and production from the applicable

---

[3] Odeco was the predecessor-in-interest to Murphy Oil U.S.A., Inc.

[4] Burmah was the predecessor-in-interest to Phillips.

6

premises. . . . The applicable premises may be charged with all costs . . . not limited to, the following:

....

> 4. Damages or losses . . . of Odeco and Burmah . . . including . . . <u>the cost of any insurance premiums paid to insure against damage or loss</u>.

Paragraph XIV (emphasis added).

Diverse does not dispute that the OIL policy requires the charging of penalties or retrospective premiums for the issuance of insurance. Diverse's main contention is that because OIL charged the penalty to Sooner, Phillips cannot transfer the liability from its decision to voluntarily repay Sooner to the net-profits account. Under the OIL policy, however, only shareholders of OIL can obtain insurance from OIL. The OIL policy clearly shows that Phillips, not Sooner, was the named insured responsible for the payment of premiums to OIL. Thus, Phillips, not Sooner, was legally obligated to pay the retrospective premium under the OIL policy. Sooner was only a joint beneficiary of the policy. Phillips's decision to make Sooner a joint policyholder and to channel its payments under the OIL policy through Sooner was merely an internal risk-management procedure and not relevant to the OIL policy. Endorsement 2 to the OIL policy states:

> If such a subsidiary or subsidiaries is [sic] so designated as a joint policyholder, the coverage and insurance limits available under the policy shall be only

7

those which would have been available had the shareholder been the named policyholder disregarding the naming of any such subsidiary or subsidiaries as a joint policyholder. <u>The premium to be paid shall be guaranteed by the shareholder</u> and shall be computed as if the shareholder alone were the named policyholder.

Endorsement 2 to OIL Insurance Limited Policy (emphasis added). Consequently, we conclude that because the charging of a retrospective premium was required under Phillips's OIL policy, the retrospective premium properly constitutes a cost of insurance authorized under the 1960 Agreement. Thus, Phillips's conduct in charging the penalty to the net-profits account did not breach the 1960 Agreement.[5]

Second, Diverse claims that Phillips breached the duty of good faith and fair dealing in both the Louisiana Mineral Code[6] and the

---

[5] Diverse also contends that the penalty provision cannot be considered a premium because, under the Louisiana Insurance Code, a premium is defined as a "sum charged, received or deposited as consideration for the purchase or continuance of insurance." La. Rev. Stat. Ann. § 22:5(7) (West 1995). Because, Diverse contends, the penalty provision was not charged for the "purchase and continuance of insurance," the Louisiana Insurance Code excludes such a penalty from consideration as a premium.

We find this attempted reliance on the definition of "premium" in the Louisiana Insurance Code to be mistaken. The 1960 Agreement does not limit the types of allowable charges to the net-profits account to insurance "premiums." Instead, it specifically allows the charging of "cost[s]" and "all other operating and development costs of every kind and character."

[6] "[A] mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith." La. Rev. Stat. Ann. § 31:122 (West 2000).

8

Louisiana Civil Code.[7] Diverse contends that Phillips, the working-interest owner, violated its duty of good faith to Diverse, the net-profits interest holder, by agreeing to repay Sooner the penalty charged to it by OIL.

Assuming, without deciding, that Louisiana law applies,[8] we reject Diverse's argument. This court has previously held that "to prove a breach of the implied covenant of good faith and fair dealing under current Louisiana law, a plaintiff must show an 'intentionally malicious failure to perform.'" America's Favorite Chicken v. Cajun Enters., 130 F.3d 180, 182 (5th Cir. 1997) (per curiam) (citing Am. Bank & Trust of Coushatta v. F.D.I.C., 49 F.3d 1064, 1068 (5th Cir. 1995)). As stated above, the actions of Phillips were clearly authorized by the 1960 Agreement. Consequently, no failure to perform occurred. Moreover, Diverse has failed to show any evidence of conscious or intentionally malicious wrongdoing by Phillips. Thus, "[b]ecause the actions appellants complain of are authorized by the . . . agreements, and because appellants have failed to produce any evidence of bad faith or ill motive," we reject Diverse's contention that Phillips

_____

[7] "Contracts must be performed in good faith." La. Civ. Code art. 1983 (West 1987).

[8] At the summary judgment phase, the parties disputed whether Texas or Louisiana law applied. The district court concluded that "[u]nder either state's law, an implied duty cannot override or contract the express terms of the contract." On appeal, Diverse again argues that Louisiana law applies. Because the district court did not decide this issue, we decline to rule on it.

breached the implied duty of good faith and fair dealing.  <u>Clark v. America's Favorite Chicken Co.</u>, 110 F.3d 295, 297 (5th Cir. 1997).

Third, Diverse contends that Phillips's agreement to reimburse Sooner for the penalty paid to OIL was void for lack of consideration.  The Premium Agreement, by its terms, is governed by Oklahoma law,[9] which, by statute, requires the existence of "sufficient cause or consideration" for the existence of a valid contract.  Okl. St. Ann. tit. 15, § 2 (West 1996).  Diverse argues that the Premium Agreement is void for want of consideration because it was merely a promise by Phillips to pay the debt of another, Sooner, for which there was neither a benefit to the promisor nor a detriment to the promissee.

We reject Diverse's argument.  Because Phillips, not Sooner, was legally obligated to pay the retrospective premium under the OIL agreement, Diverse's contention that Phillips assumed Sooner's liability by reimbursing it under the Premium Agreement is without merit.  Moreover, under Oklahoma law, the written agreement between Phillips and Sooner is presumptive evidence of consideration.  Okl. Stat. Ann. tit. 15, § 114 (West 1996) ("A written instrument is presumptive evidence of consideration.").  The Premium Agreement, itself, bolsters such a presumption by explicitly reciting consideration: "NOW, THEREFORE, in consideration of the covenants,

_____

[9]    The Premium Agreement states, "This Agreement shall be governed by and construed in accordance with the substantive laws of the State of Oklahoma."

10

assumptions, the payment, other consideration, and the release set forth herein, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows. . . ."

## CONCLUSION

Based on the foregoing, we AFFIRM the district court's grant of summary judgment to Phillips, its denial and summary judgment to Diverse, and its dismissal of the case.