# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 2, 2021

Lyle W. Cayce
Clerk

No. 19-30887

Sabre Industries Incorporated,

*Plaintiff—Appellee Cross-Appellant*,

*versus*

Module X Solutions, L.L.C.; Kristen Schoonover Erler,
as the Independent Executrix of the Succession of
Steven L. Schoonover,

*Defendants—Appellants Cross-Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:15-CV-2501

Before Barksdale, Southwick, and Graves, *Circuit Judges*.
Per Curiam:*

This appeal in a diversity action arises from a jury trial regarding a business dispute between parties to a Joint Venture Agreement ("JVA") in the telecommunications shelter manufacturing industry. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

## I.

In 2013, Steven Schoonover had previously owned telecommunications manufacturing companies, but he had for a few years been out of the shelter business. He approached Peter Sandore, the CEO of Sabre Industries, Inc. ("Sabre") about getting back into the industry. Those discussions ultimately led to Schoonover forming Module X Solutions, L.L.C. ("MXS") at Sandore's encouragement. Sandore and Schoonover intended that MXS would assist in expanding Sabre's market share by increasing production capacity, which would in turn provide Schoonover and MXS with a steady stream of guaranteed work.

On April 24, 2014, Sabre and MXS executed the JVA, in which Sabre agreed to provide MXS with "telecommunications and non-telecommunications work concerning, but not limited to, the manufacture of shelters, building systems and [other] products as agreed upon between the parties." The JVA had an initial term of two years, with an option to extend at the term's end. "Sabre agree[d] to award an annual quantity of orders to MXS equal to three hundred (300) shelters," awarding at least seventy-five shelters in any three-month period. Sabre's two-year obligation to award 300 shelters per year was subject to the following limitation:

> If volume awarded to MXS by Sabre falls below 75 shelters in any rolling 3 month period, MXS will have the right to terminate the agreement with a sixty (60) day notice. Notice will include a thirty (30) day remedy period within which Sabre can choose to award the agreed upon volume or allow the agreement to terminate.

The JVA then defines Sabre's "default" as "awarding [fewer] than 75 units in a 3 month period or less than 300 units in a 12 month period, subject to the notice and cure period[.]"

The JVA contemplated that large companies like Allied Fiber, Verizon, and AT&T would generate the bulk of the shelter orders that Sabre would assign to MXS. Shortly after executing the JVA, Sabre assigned MXS an Allied Fiber shelter project, but, because MXS was still getting up to speed in its production capacity, MXS asked Sabre to cast five concrete shelters for Allied Fiber. After Sabre assigned MXS the Allied Fiber project, MXS began dealing directly with Allied Fiber. MXS never paid Sabre for the work Sabre did on the Allied Fiber project. At the time, MXS depended heavily on Sabre for generating work, and MXS contends that Sabre breached its obligations under the JVA by assigning too few shelter orders, causing MXS' cash shortage and inability to pay Sabre for the Allied Fiber project. It is undisputed that MXS never notified Sabre of any alleged breach on Sabre's part.

On April 6, 2015, Sabre, citing MXS' failure to pay for the Allied Fiber shelters, notified MXS that it was terminating the JVA. On October 8, 2015, Sabre sued MXS in federal court for breaching the JVA. MXS counterclaimed that Sabre breached the JVA by awarding insufficient shelter orders, and MXS also asserted claims for fraud and misrepresentation by Sandore in inducing Schoonover to form MXS.

Sabre moved for partial summary judgment on its breach-of-contract claim regarding MXS' failure to pay for the Allied Fiber shelters. The parties' primary dispute regarding partial summary judgment pertains to whether the JVA encompassed the Allied Fiber project, or whether this was a separate, collateral agreement between the parties. The district court refused to consider an affidavit from Schoonover—MXS' primary evidence on the issue—because the district court concluded that Schoonover's prior deposition testimony contradicted the affidavit. The district court then concluded that the JVA encompassed the Allied Fiber project and entered partial summary judgment in Sabre's favor on its breach-of-contract claim.

The district court also entered partial summary judgment on several other claims and defenses not at issue in this appeal.

The parties tried their remaining claims before a jury. Although the district court had concluded that MXS breached the JVA, contract claims and defenses remained for both parties, and both parties tried their breach-of-contract claims. After a two-week trial, the jury: (i) concluded that MXS breached the JVA by failing to pay for the Allied Fiber project; (ii) rejected MXS' defenses to its breach; (iii) rejected MXS' breach-of-contract claim against Sabre; (iv) awarded Sabre $423,708.00 for MXS' breach regarding the Allied Fiber project; (v) rejected MXS' and Sabre's fraud claims; and (vi) found for MXS on its negligent misrepresentation claim and awarded $2,150,211.00, which mirrored MXS' valuation of its lost-contract damages. The district court denied the parties' post-trial motions to set aside the jury verdict or for a new trial. The JVA includes an attorney's fee provision. Because Sabre prevailed on its contract claim and MXS did not, the district court awarded Sabre $1,101,145.00 in attorney's fees. Both parties appealed, raising numerous points of reversal.

**II.**

We begin with MXS' arguments. MXS first contends that the district court erred in excluding Schoonover's affidavit and so should not have entered partial summary judgment on Sabre's contract claim regarding the Allied Fiber project. In concluding that the JVA encompassed the Allied Fiber project, the district court relied on Schoonover's deposition testimony that an Allied Fiber project described in an emailed spreadsheet was "JVA related." Pointing to a later-submitted affidavit by Schoonover, however, MXS asserts that this spreadsheet refers to a different Allied Fiber project, rather than the one at issue in this case. According to MXS, because it was not then capable of completing all the work, the parties formed a separate agreement, outside the JVA's scope, wherein Sabre agreed to cast the shelters, which

MXS would finalize. MXS thus argues that its failure to pay Sabre for the disputed Allied Fiber project did not implicate the JVA.

"It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992)). However, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine [disputes] in a motion for summary judgment." *Id.* at 496. An affidavit supplements prior testimony if it "simply clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts not previously provided in the deposition." *Id.* at 496. On this point, context matters; this court has determined that a later affidavit is supplementary when the prior deposition testimony only glanced upon the disputed issue. *See Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 766 (5th Cir. 1988). The inquiry, as a whole, is aimed at gleaning whether the later affidavit is "so markedly inconsistent with the affiant's prior deposition as to constitute an obvious sham." *Id.*

At his deposition, Schoonover was shown a spreadsheet from an August 2014 email between two MXS executives that listed an Allied Fiber project among fourteen other shelter projects. Schoonover confirmed that "all of the business contemplated in this document was JV[A] related," but he was not specifically asked whether the spreadsheet referred to the disputed Allied Fiber project. In these circumstances, the district court abused its discretion in concluding that the Schoonover affidavit contradicted, rather than supplemented, his deposition testimony. Schoonover was not specifically asked whether the Allied Fiber project referenced in the spreadsheet was *the* Allied Fiber project at issue in this case. He was asked about this crucial issue "only once" and he "was not asked to exhaust his recollection about" the

disputed Allied Fiber project, so "he had no occasion to reveal" what he would later assert in his affidavit. *Clark*, 854 F.2d at 766. Accordingly, the district court erred in excluding Schoonover's affidavit.

But "[s]ummary judgment must be affirmed if it is sustainable on any legal ground in the record, and it may be affirmed on grounds rejected or not stated by the district court." *S&W Enters., L.L.C. v. S. Tr. Bank of Ala., NA*, 315 F.3d 533, 537-38 (5th Cir. 2003) (citations omitted). If the Schoonover affidavit is considered, the dispute boils down to disagreement over the JVA's application. The district court did not analyze the JVA's terms to decide whether it encompassed the disputed Allied Fiber project; the district court instead relied primarily on Schoonover's deposition testimony.

Sabre supported its contention that the JVA encompassed the disputed Allied Fiber project with three pieces of evidence: (i) Schoonover's deposition testimony; (ii) the JVA's language; and (iii) testimony from Jim Dean, another MXS executive. The main evidence that MXS offered to dispute Sabre's partial summary judgment motion is Schoonover's affidavit, in which he asserts that the disputed Allied Fiber project was somehow separate from the JVA. MXS essentially says that the JVA allowed the parties to create separate, collateral agreements to which the JVA's terms would not apply.

The JVA's language belies MXS' position. The JVA sets rules for "any orders that [MXS] accepts from Sabre," and it calls for the parties to "cooperate" to ensure that "shelters are awarded in a manner that maximizes the ability to meet business and customer demands." The JVA further provides that, should it lapse, "the commercial relationship between Sabre [and] MXS" would "terminate," demonstrating that all business dealings between them were pursuant to and governed by the JVA. The JVA does not necessarily set rules for how the parties interact with clients, and so MXS' direct dealings with Allied Fiber do not negate the JVA's applicability. The JVA as a whole is unambiguous and susceptible to one interpretation: it

governs the business dealings between the parties over the JVA's two-year term. Finally, even if there was error on the district court's part in granting partial summary judgment, it was harmless. The issue of MXS' breach was tried and submitted to the jury, which concluded that MXS breached the JVA and that Sabre did not.

## III.

MXS next contends that it is entitled to a new trial because: (i) the evidence does not support the jury's finding that Sabre did not breach the agreement by supplying an insufficient number of shelter orders; and (ii) the district court admitted prejudicial evidence regarding Schoonover's racial bias. Neither argument is persuasive.

## A.

MXS makes two primary arguments regarding Sabre's alleged breach. MXS first argues that in denying its new trial motion, the district court overly relied on the undisputed fact that MXS never invoked the JVA's notice-and-cure provision. MXS argues instead that the JVA's notice-and-cure provision relates to MXS' termination rights and not to whether Sabre had breached in the first instance. Second, MXS contends that the evidence does not support the jury's finding that Sabre did not breach the JVA, but rather that Sabre breached the JVA by awarding too few shelters to MXS.

A district court may grant a new trial when the "verdict is against the weight of the evidence." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). In ruling on a motion for a new trial under rule 59 of the Federal Rules of Civil Procedure, "the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party." *Id.* at 613. This court reviews the district court's rule 59 order for abuse of discretion, but we are more deferential when a new trial is denied than when a new trial is granted. *See Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997); *Allied Bank-West, N.A. v. Stein*, 996 F.2d 111, 115 (5th Cir. 1993). The

district court thus "abuses its discretion by denying a new trial only when there is an 'absolute absence of evidence to support the jury's verdict.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991)).

In the JVA, "Sabre agree[d] to award an annual quantity of orders to MXS equal to three hundred (300) shelters," with no fewer than seventy-five shelters during any three-month period. If Sabre's orders fell below this threshold, the JVA gave MXS the right to terminate the agreement with sixty days' notice, with a thirty-day window for Sabre to cure the breach. The parties do not dispute that MXS never invoked its termination rights under the JVA. If Sabre breached the JVA, then it cannot recover for MXS' subsequent breach in failing to pay for the Allied Fiber shelters. LA. CIV. CODE art. 2003.

At bottom, MXS' first objection is a disagreement about the district court's interpretation of the JVA's notice-and-cure provisions. Interpretation of a contract is a legal question reviewed de novo. *Hoffman v. L & M Arts*, 838 F.3d 568, 581 (5th Cir. 2016). MXS' failure to provide Sabre notice of its alleged breach and an opportunity to cure negates MXS' contract claim. *See* LA. CIV. CODE art. 2015; *Otnott v. Molecular Chems., Inc.*, 293 So. 2d 260, 261 (La. Ct. App. 1974) (concluding that an almost identical contractual provision foreclosed subsequent suit where the plaintiff never gave the defendant notice of its breach and an opportunity to cure). Further, MXS never argued that Sabre's delayed performance was no longer valuable. *See* LA. CIV. CODE art. 2016.

MXS' evidentiary argument is similarly unavailing. Sabre introduced evidence that supports the jury's verdict that it did not breach, such as testimony that Sabre sent "around 80 or just over 80" shelter orders to MXS "in the first three-month period after the Joint Venture Agreement was executed," the main period to which MXS points in support of its contract claim. Accordingly, there is not an "absolute absence of evidence to support the

jury's verdict." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 472 (5th Cir. 2015) (internal quotation marks and citation omitted). Because the evidence and Louisiana law support the jury's and the district court's conclusions that Sabre did not breach the JVA, the district court did not err in denying MXS' new-trial motion.

**B.**

MXS next argues that "Sabre's presentation of testimony from its rebuttal witness Mary Webber that Steve Schoonover and MXS mistreated her and other African-American employees was an intentional effort to present improperly prejudicial evidence to the jury designed to racially prejudice the jury against Schoonover and MXS." MXS avers that Sabre's counsel elicited the testimony to "destroy Steve Schoonover and his family," and that this misconduct is grounds for a new trial. MXS objected below to the relevancy of Webber's testimony, but MXS now concedes that it did not raise unfair prejudice and so argues that a "substantial injustice" standard applies.[1] MXS does not argue that the district court erred in admitting the testimony, but rather that attorney misconduct in eliciting the testimony requires a new trial.

The district court ruled in limine that evidence of workplace environment was relevant to the parties' allegations of extortion, bad faith, and ill motives in the execution and performance of the JVA. Such evidence also pertained to the parties' dispute about whether MXS, in bad faith, lured Sabre's employees to work for MXS. At trial, Schoonover testified about MXS' workplace environment and his benevolence as a supervisor, while accusing Sandore and Sabre of unsavory business practices and mistreatment of employees. Sabre then called Webber, who worked at Sabre before being

---

[1] MXS points to our decision in *Hall v. Freese*, 735 F.2d 956 (5th Cir. 1984). There, we noted that "improper argument may be the basis for a new trial where no objection has been raised only 'where the interest of substantial justice is at stake.'" *Id.* at 961 (quoting *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975)).

recruited by Schoonover to serve as MXS' human resources director, to rebut Schoonover's characterization of MXS' work culture. Webber testified that working conditions at MXS were "like what [she had] seen and read about the '60s or prior," and that the employees whom MXS denied regular use of restrooms and microwaves were "100 percent . . . African American." Although Webber's testimony "concern[ed]" the district court, it concluded that the "record simply does not support a finding of egregious conduct on the part of Sabre's counsel and/or substantial injustice suffered by MXS."

We agree with the district court. Because MXS does not argue that the district court erred in admitting the testimony, we focus only on whether the record reflects attorney misconduct that worked substantial injustice. The record does not so reflect. Instead, the statements at issue here were relevant to the parties' claims and defenses. MXS' sole basis for alleging misconduct on Sabre's part is that MXS cannot fathom another reason to elicit Webber's testimony on MXS' working conditions, but, as the district court noted, MXS' working conditions and its treatment of employees were relevant to the parties' claims and defenses. MXS also specifically placed its work culture in issue by eliciting Schoonover's testimony about his benevolence as a supervisor. Webber's testimony is not so egregious as to work substantial injustice, and so the district court did not err in denying a new trial on that basis.

## IV.

Last, MXS objects to the district court's award of attorney's fees to Sabre. "A fee award is governed by the same law that serves as the rule of decision for substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). That means Louisiana law applies. Under Louisiana law, attorney's fees are recoverable only if "authorized by contract or statute." *Peyton Place, Condo. Assocs., Inc. v. Guastella*, 08-365 (La. App. 5 Cir. 5/29/09), 18 So. 3d 132, 146. The JVA allows "reasonable attorneys fees" incurred by the "non-breaching party" in "enforc[ing its] rights and

remedies." Because Sabre prevailed on its breach-of-contract claim, which the district court concluded was central to the trial litigation, the district court awarded Sabre over $1 million in attorney's fees.

"Under Louisiana law, an award of attorney fees and costs is reviewed for an abuse of discretion." *Trafficware Grp., Inc. v. Sun Indus., L.L.C.*, 749 F. App'x 247, 253 (5th Cir. 2018) (citing, *e.g.*, *Conforto v. Toscano*, 17-20 (La. App. 5 Cir. 12/13/17), 234 So. 3d 252). We have previously observed that a "district court has broad discretion to award attorney's fees, and an appellate court has only a limited opportunity to 'appreciate the complexity of trying any given case and the level of professional skill needed to prosecute it.'" *Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 482 (5th Cir. 2006) (quoting *Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir. 2000)).

Sabre identified three categories of time spent by its attorneys in trying this case. The first category is attorney time solely related to Sabre's breach-of-contract claim (134.3 hours). The second category primarily pertains to the trial, which Sabre characterized as covering the facts, claims, or issues interwoven with Sabre's breach of contract claim (4,584.3 hours). The third category is post-trial attorney time related to the motion for attorneys' fees (174.7 hours). MXS objects to Sabre's entitlement to fees for the second category.

We first determine Sabre's entitlement to fees relating to the trial despite having won partial summary judgment on its contract claim. We then review whether the district court's fee award is reasonable. *Cf. Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 231 (5th Cir. 2000) (reviewing first whether a contract's fee provision limited the prevailing party to contract-related claims, and then reviewing whether the overall award was reasonable).

Regarding Sabre's entitlement to trial fees, MXS argues that "the single successful breach of contract claim upon which it is basing this attorneys'

fee motion (Count 1) was not tried to the jury." But the verdict form's first interrogatory asked the jury whether Sabre had "prove[n] by a preponderance of the evidence that MXS breached the [JVA]." Moreover, Sabre was not entitled to damages for its contract claim until and unless the jury concluded that MXS' affirmative defenses were without merit, including MXS' claim that Sabre's default of the JVA preceded MXS' breach and default. Of the twenty-two special interrogatories on the verdict form, only seven pertained to claims outside the JVA. "A court need not segregate fees when the facts and issues are so closely interwoven" that they cannot be separated. *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.*, 261 F.3d 512, 528 (5th Cir. 2001) (citation omitted). Accordingly, the district court's award of summary judgment on its contract claim does not foreclose Sabre's entitlement to recover fees relating to the trial.

As for the award's reasonableness, the Supreme Court of Louisiana has articulated ten factors to gauge an award's reasonableness:

> (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge.

*State, Dep't of Transp. & Dev. v. Williamson*, 597 So. 2d 439, 442 (La. 1992). In concluding that Sabre's requested fee amount was reasonable, the district court reasoned that

> the jury found MXS breached the JV Agreement and Sabre did not; Sabre's attorneys reviewed hundreds of thousands of potentially relevant documents; approximately thirty depositions were taken; exhaustive pretrial motion practice; the extensive experience of the Sabre attorneys in handling complex litigation; the number of in-person and telephone conferences; a

three week jury trial; and the difficulty counsel faced in explaining intricate facts to the jury.

MXS makes no argument that the district court misapplied Louisiana law in determining Sabre's fee award. Nor does it contest the evidentiary basis on which the district court based its fee award: Sabre submitted several affidavits and what the district court described as "voluminous pages of unredacted, contemporaneously-recorded billing entries," but MXS does not identify a single entry that is excessive or unrelated to the JVA. Instead, MXS contests the award's overall reasonableness. It notes that its attorneys spent less than 2,000 hours working on this case below, while Sabre's attorneys worked almost 5,000 hours. But this disparity makes sense given that MXS' claims exposed Sabre to far greater liability than MXS faced against Sabre's claims—MXS sought $27 million versus Sabre's $7 million. MXS also argues that the award is unreasonable because it exceeds Sabre's damages, but "[i]t is not per se unreasonable, as a matter of law, for the attorney fees award to be greater than the award for damages." *Health Educ. & Welfare Fed. Credit Union v. Peoples State Bank*, 2011-672 (La. App. 3 Cir. 12/7/11), 83 So. 3d 1055, 1057 (citing *Dailey v. The Home Furnishings Store*, 02-1225 (La. App. 4 Cir. 9/17/03), 857 So.2d 1051). Because MXS does not argue that the district court misapplied Louisiana law or misconstrued the evidence before it, we defer to the district court's comparatively greater opportunity to weigh "the complexity of trying [this] case and the level of professional skill needed to prosecute it." *Hopwood*, 236 F.3d at 277.

## V.

We turn to Sabre's appeal. The jury found for MXS on its negligent misrepresentation claim against Sabre based on Sandore's statements and omissions. Although the verdict interrogatory on MXS' negligent misrepresentation claim did not require the jury to identify the statement or omission on which its finding was based, MXS alleged several material misrepresentations. The gist of these allegations is that although Sandore represented that

AT&T and Verizon would continue to place substantial shelter orders through the JVA, Sandore failed to reveal that AT&T and Verizon were separately approaching various business deals that would dramatically lower their demand for shelters. MXS also alleges that Sandore told Schoonover to form MXS and to acquire and renovate a building plant, and that Sandore misrepresented that Sabre would guarantee MXS' cash flow with new shelter orders. MXS says that Schoonover would not have formed and invested heavily in MXS had Sandore presented accurate information about the shelter market. Sabre argues that these statements are not actionable under Louisiana law.

This court reviews de novo a district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court. *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) "Rule 50 entitles a movant to judgment as a matter of law when 'a party has been fully heard on an issue . . . and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018) (quoting FED. R. CIV. P. 50(a)(1)). "A party is entitled to judgment as a matter of law only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 455 (5th Cir. 2001). "Evidence is examined as a whole and all inferences are drawn in favor of the non-moving party." *N. Cypress Med. Ctr.*, 898 F.3d at 473. The district court does not, however, weigh evidence or make credibility determinations, for those considerations are the jury's province. *See Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 966 (5th Cir. 2016).

Under Louisiana law, the elements of negligent misrepresentation are: (i) a legal duty on the defendant's part to supply correct information; (ii) breach of that duty by act or omission; (iii) the plaintiff's detrimental

reliance on the misinformation; and (iv) damages. *See Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 491 n.15 (5th Cir. 2009). The misinformation also must pertain to facts in existence at the time of the breach. *See, e.g.*, *Ethyl Corp. v. Gulf States Utilities, Inc.*, 2001-2230 (La. App. 1 Cir. 10/2/02), 836 So. 2d 172, 178; *America's Favorite Chicken Co. v. Cajun Enters., Inc.*, 130 F.3d 180, 186 (5th Cir. 1997) ("Under Louisiana law, a cause of action exists for fraudulent misrepresentation of past or present facts; unfulilled promises or statements as to future events, however, cannot be the basis for a fraud action.").

Under this standard, Sandore's promises cannot form the basis of a valid negligent misrepresentation claim. Sandore's assurances that Sabre would always guarantee MXS' profitability do not relate to "past or present facts," but rather to what later turned out to be "unfulfilled promises," which are not actionable under Louisiana's misrepresentation law. *America's Favorite Chicken Co.*, 130 F.3d at 186. *See Swann v. Magouirk*, 157 So. 2d 749, 751 (La. Ct. App. 1963) (noting that fraud and misrepresentation claims "must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events"). However, Sandore's omission about the state of the shelter industry in 2014 is actionable. This omission involves then-existing facts. Information about Verizon and AT&T's business just before the parties signed the JVA pertains to facts then in existence, and so Sandore's failure to reveal those facts could support a negligent misrepresentation claim under Louisiana law. *See America's Favorite Chicken Co*, 130 F.3d at 186.

Further, evidence at trial regarding Sandore's omissions supports the remaining elements of negligent misrepresentation. The Supreme Court of Louisiana has held that a duty to provide correct information is "imposed by law based upon policy considerations due to the tortfeasor's knowledge of the prospective use of the information which expands the bounds of his duty

of reasonable care to encompass the intended user." *Barrie v. V.P. Exterminators, Inc.*, 625 So. 2d 1007, 1016 (La. 1993). "'The theme in [Louisiana cases on negligent misrepresentation] is that one is liable for negligent disclosure if he has superior knowledge and knows the other party is relying upon him for such knowledge.'" *Schaumburg v. State Farm Mut. Auto. Ins. Co.*, 421 F. App'x 434, 440-41 (5th Cir. 2011) (alteration in *Schaumburg*) (quoting FRANK L. MARAIST & THOMAS C. GALLIGAN, JR., LA. TORT LAW § 5.07[8] (2d ed. 2004)).

Here, Sandore knew that Schoonover, who had for two years been retired and out of the shelter business, was relying on Sandore for an accurate outlook of the industry so that Schoonover could decide whether his investment in MXS would be worth it. Schoonover testified that Sandore represented himself as being particularly knowledgeable about AT&T's business. Schoonover testified, however, that before he signed the JVA, Sandore failed to report that "AT&T was doing a deal with DirecTV and would probably cut all their expenditures," and that "Verizon was not going to participate in the JV[A]." This information was highly relevant, because Sandore intimated that AT&T and Verizon demand for shelters would go a long way toward guaranteeing the JVA's profitability. According to Schoonover, had Sandore accurately relayed the state of the shelter market, Schoonover "would simply not have signed the [JVA]." Accordingly, MXS introduced evidence that Sandore had "superior knowledge" of the shelter market and knew that Schoonover was "relying upon him for such knowledge.'" *Schaumburg*, 421 F. App'x at 440–41. The facts and inferences surrounding MXS' negligent misrepresentation claim do not "point so strongly and overwhelmingly in [Sabre's] favor that reasonable jurors could not reach a contrary conclusion." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (en banc) (internal quotation marks and citation omitted). On this

evidence, the district court did not err in denying Sabre's renewed motion for judgment as a matter of law.

## VI.

The jury awarded MXS $2,150,211.00 on its misrepresentation claim. This figure matches one of MXS' estimations of its contractual damages despite the jury's rejection of MXS' contract claim. MXS' expert based his contractual damages estimation on counterfactuals in which Sabre never terminated the JVA, or terminated the JVA later than it did, under assumptions of the expected volume of shelter orders. At the low end of this estimation, the expert testified that if Sabre had terminated the JVA on April 6, 2015, after awarding 288 shelter orders, MXS' lost profit damages would be $2,150,211.00. Evidence of MXS' reliance damages came principally in the form of testimony about expenditures and investments in MXS based on Sandore's representations and omissions. The district court instructed the jury on contract damages, but not on tort damages. Sabre argues that, because the jury's damages award mirrors MXS' estimation for lost contract damages, the jury mistakenly awarded contractual damages on MXS' tort claim. Sabre does not seek remittitur, but rather judgment as a matter of law that the evidence does not support the award.

Louisiana "allows recovery in tort for purely economic loss caused by negligent misrepresentation where privity of contract is absent." *Barrie*, 625 So. 2d at 1014. Although the Supreme Court of Louisiana does not appear to have resolved whether Louisiana recognizes benefit-of-the-bargain—*i.e.*, lost-profit—damages for negligent misrepresentation, the Restatement, on which the Supreme Court of Louisiana has relied, does not recognize lost-profit damages for negligent misrepresentation. *See* RESTATEMENT (SECOND) OF TORTS § 552B (AM. LAW INST. 1977); *Barrie*, 625 So. 2d at 1015. Instead, only reliance damages are available for a claim of negligent misrepresentation. *See* RESTATEMENT § 552(B).

Although it appears that the jury relied at least in part on MXS' lost-profit valuation, there was not a "complete absence" of evidence to support the jury's award. *Rivera v. Union Pac. R.R. Co.*, 378 F.3d 502, 505 (5th Cir. 2004). A jury's verdict should not be disturbed if it is "clearly within the universe of possible awards which are supported by the evidence." *Narcisse v. Ill. Cent. Gulf R.R. Co.*, 620 F.2d 544, 547 (5th Cir. 1980) (quoting *Bonura v. Sea Land Serv., Inc.*, 505 F.2d 665, 670 (5th Cir. 1974)). MXS introduced evidence of millions of dollars in reliance damages—expenditures it claims to have made in reliance on Sandore's failure to fully disclose information about the shelter market. These expenditures made in reliance on Sandore's omissions fall within the realm of compensable damages for negligent misrepresentation. *See Barrie*, 625 So. 2d at 1013; LA. CIV. CODE art. 2315. Accordingly, there was a legally sufficient evidentiary basis supporting the jury's conclusion that MXS suffered reliance damages. *See Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) ("[O]nly when 'there is no legally sufficient evidentiary basis' will we disturb the jury's verdict." (quoting *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039-40 (5th Cir. 2011))). Further, to the extent that the jury's award is traceable to the absence of jury instructions on tort damages, Sabre did not object below to the jury instructions; to the contrary, the district court largely adopted the parties' jointly proposed jury instructions. *See Tex. Beef Grp. v. Winfrey*, 201 F.3d 680, 689 (5th Cir. 2000) ("If a party fails to object with specificity to a proposed instruction, the right to challenge the instruction on appeal is waived."); FED. R. CIV. P. 51. Accordingly, the district court did not err in affirming the jury's verdict.

AFFIRMED.